FILED

AUG 2 8 2002

LARRY W. PROPES, CLERK
CHARLESTON, SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| Wayne Axson, J.W. Barnes, O'Neal Barr, Norman Bolen, F.H. Dick, C.R. Brown, Kirby Brown & Son, Gregg Covington, Michael Cumbee, Ryan Gunter, Andy Gunter, Mark Kinard, Clarence McMillan, Donnie Morris, J.L. Nettles, Jeff Reeves, H.B. Salley, Sandy Sanders, James Smith, John T. Still, Richard Widener, Glenn Barr, K.B. Bates, Von L. Ginn, Lonnie Ginn, Tony Jarrell, Carl Platts, Vernon Rahn, Larry Rahn, Billy Williams, E.S. Bennett, Bud Bowers, Corrin Bowers, W.H. Bull, W.T. Dantzler, Don Funchess, Maynard Funchess, Garrick Farms, Inc., Don Garrick, Warren Mole, Jimmy Mole, Emmett Rouse, Bickley Farms, Inc., Ken Bickley, Bruce Bishop, Dargon Culclasure, W. Capers Holmen, Jeff Coat Farms, Carole F. Jeffcoat, Roland Q. Mooer, Jessie Nimmons, Moss H. Perrow, Jr., Jacob B. Shuler, Jr., Ted Shuler and Sons, William C. Stanley, Dennis R. Ulmer, Lewis J. Ulmer, J. Edward Brown, J.N. Brown, Gerry H. Brown, Robert Crosby, John Donnell Farms, A.W. Donnell, Jerry D. Carson, G.E. Cone, Robert Connelly, W.M. DuBose & Sons, Inc., James E. Fender, Bryan Fogle, Stanley Gruber, Ham Bone Farms, Inc., Charles Reeves, Hamp Holmes, B.L. Jarrell, Jerry Jarrell, Wes Jarrell, Charles Lafitte, Jeff Lucas, Daniel McAlhaney, Otis McAlhaney, Harry McAlhaney, Sublett McAlhaney, Ronnie McClure, David McKenzie, Hugh C. McLauren, III, Charles R. McMillan, J.O. Patterson, Keith Poole, Mark Priester, Robert H. Riley, Jr., Tilden F. Riley, III, Carnell River, J. Howard Shirer, Estate of S. Ben Solomons, Hughsie | Civil Action No. 9 02 2879 23<br><br>**NOTICE OF REMOVAL** |

1

Trowell, James H. Weathers, Jody Weathers, John Wienges, O.H. Wienges & Son, Joseph E. Wooten, Ashley Bush, Chris Carsten, D.Z. Danztler, R. Barry Hutto, Clyde Davis, Sr., Clyde Davis, Jr., Francis Davis, John O. Davis, Chris Furtick, Hayne Haigler, David Jarrell, Hugo Lyons, Johnny McMillam, Gene Nix, Gene Nix Farms, Inc., Estate of Marvin Ott, Harry Ott, Rizer Farms, Marion Rizer, Phillip Rizer, Michael P. Shirer, Thomas R. Stowe, Wesley O. Davis, Davis Farms, John Heirs, Lee Hughs, Mickey Jones, KYM Farms, Inc., and Aubrey Pool, )

Plaintiffs, )

v. )

Monsanto Co., Delta and Pine Land Co., Paymaster Seed Co., UAP Carolinas, Inc., and Mixon Seed Co., Scott Butler, Scott Price, Reasa Thomas, Helena Chemical Co., Carolina Eastern, Inc., Holly Hill Farm Center, North Farm Center, Carolina Eastern Warehouse, Inc., Carolina Eastern-Trenton and Carolina Eastern-Scranton, )

Defendants. )

1. Defendant Monsanto Company ("Monsanto"), pursuant to 28 U.S.C. § 1441, files a Notice of Removal of the above-entitled action from the Court of Common Pleas for Hampton County, State of South Carolina, to the United States District Court for the District of South Carolina, Beaufort Division.

2. The above-entitled action was filed on July 29, 2002 and instituted by Plaintiffs against Monsanto on July 30, 2002. This action is currently pending in the Court of Common Pleas for Hampton County, State of South Carolina, being Civil Action No. 02-CP-25-421.

3. Upon information and belief, at the time of the commencement of this action, all of the above plaintiffs were and still are citizens of the State of South Carolina.

4. Defendant Monsanto Company was and still is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Missouri.

5. Upon information and belief, at the time of the commencement of this action, UAP/Georgia Ag. Chem., Inc. was and still is a corporation doing business as UAP Carolinas. At the time of the commencement of this action, UAP/Georgia Ag. Chem, Inc. was and still is incorporated under the laws of the State of Georgia and maintains its principal place of business in the State of Georgia.

6. Upon information and belief, at the time of the commencement of this action, Defendant Delta and Pine Land Company was and still is incorporated under the laws of the State of Delaware and maintains its principal place of business in Mississippi.

7. Upon information and belief, at the time of the commencement of this action, Defendant Helena Chemical Company was and still is incorporated under the laws of the State of Delaware and maintains its principal place of business in Tennessee.

8. Upon information and belief, at the time of the commencement of this action, Defendant Paymaster Seed Company was and still is incorporated under the law of the State of Delaware and maintains its principal place of business in Texas.

9. Upon information and belief, at the time of the commencement of this action, Defendants Scott Butler, Scott Price, Reasa Thomas, Carolina Eastern, Inc. (Carolina Eastern-Trenton, Carolina Easter Warehouse, Holly Hill Farm Supply, North Farm Supply, and

Carolina Eastern-Scranton), and Mixon Seed Company were and still are residents of the State of South Carolina.

10. This action is of a civil nature and involves a controversy wholly between citizens of different states. This action is removable pursuant to 28 U.S.C. § 1441 in that there is complete diversity as to all properly joined parties and the amount in controversy exceeds the sum of Seventy Five Thousand and No/100 ($75,000) Dollars, exclusive of interest and costs, and said action is one over which the District Court of the United States has original jurisdiction pursuant to 28 U.S.C. § 1332.

11. The plaintiffs with valid claims against non-diverse defendants were misjoined under Federal Rule of Civil Procedure 20(a) with plaintiffs who do not assert valid claims against non-diverse defendants. Specifically, the claims presented in this matter do not arise out of "the same transaction or occurrence" as required by Fed.R.Civ.P. 20(a) in that the plaintiffs named in this lawsuit allege defects in numerous different variations of cotton seed, purchased from numerous different dealers, at different times and in different amounts, and planted in different locations in various weather and soil conditions. As such, these claims are improperly joined under Rule 20(a) of the Federal Rules of Civil Procedure. *See, e.g., Aaberg v. Acands, Inc.*, 152 F.R.D. 498 (D.Md. 1994) (holding that Complaint joining numerous plaintiffs in asbestos action which simply sets forth a skeleton claim "without any attempt at individualization or description of the particular circumstances" did not satisfy the same transaction or occurrence requirement of Fed.R.Civ.P. 20(a)).

12. Pursuant to the fraudulent joinder doctrine, "a district court can assume jurisdiction over a case even if, *inter alia*, there are nondiverse named defendants at the time the case is removed." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). The removing

party must establish "[t]hat either there is no possibility the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Id.* at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). Where certain plaintiffs with valid claims against non-diverse defendants are misjoined under Fed.R.Civ.P. 20(a) with other plaintiffs who do not assert valid claims against non-diverse defendants, a federal district court may apply the fraudulent joinder doctrine and sever those actions "so as to preserve the defendants' right to removal in the remaining actions." *In re: Rezulin Products Liability Litigation*, 168 F.Supp.2d 136, 148 (S.D.N.Y. 2001); *see also In re: Diet Drugs (Phetermine, Fenfluramine, Dexfenfluramine)*, 1999 WL 554584 at *4 (E.D.Pa. July 16, 1999) (finding that because "the Plaintiffs that destroy diversity jurisdiction are fraudulently joined it may ignore the citizenship of those parties and exercise jurisdiction over [the] action"); *Rudder v. K Mart Corp.*, 1997 WL 907916 (S.D.Ala. Oct 15, 1997) (dismissing egregiously misjoined claims of non-diverse plaintiffs, denying remand, and refraining from ruling on the propriety of the joinder of the remaining plaintiffs until the proper motion was brought); *Lyons v. The American Tobacco Co., Inc.*, 1997 WL 809677 (S.D.Ala. Sept. 30, 1997) (dismissing the claims brought by egregiously misjoined non-diverse plaintiffs and denying motion to remand); *Koch v. PLM International, Inc.*, 1997 WL 907917 (S.D.Ala. Sept. 24, 1997) (dismissing egregiously joined claim of non-diverse plaintiff and retaining jurisdiction over remaining claims).

13. Although the vague allegations contained in plaintiffs' Complaint do not specifically identify which plaintiffs are bringing claims against which defendants, the diversity requirements of 28 U.S.C. § 1332 are met by all plaintiffs whose only valid claims exist

against Defendants Monsanto, UAP Carolinas, Inc., Delta and Pine Land Company, Helena Chemical Company and Paymaster Seed Company.[1] Because the Complaint in this matter attempts to improperly join the claims of plaintiffs with valid claims against non-diverse defendants with plaintiffs who do not assert valid claims against non-diverse defendants, this court must find that the plaintiffs' whose claims destroy diversity jurisdiction are fraudulently joined. As such, this court may sever those claims and retain jurisdiction over the remaining claims.

14. Defendant Monsanto Company files together with this Notice a copy of all process and pleadings served upon them in this action.

15. Defendant Monsanto Company has provided a copy of the Notice of Removal to the Clerk of Court for Hampton County, South Carolina and to counsel for all parties.

16. Defendants Delta and Pine Land Company, Paymaster Seed Company, UAP Carolinas, Inc., Mixon Seed Company, Scott Butler, Scott Price, Reasa Thomas, Helena Chemical Company, Carolina Eastern, Inc., Holly Hill Farm Center, North Farm Center, Carolina Eastern-Trenton, and Carolina Eastern-Scranton hereby consent to this Notice of Removal, with an express reservation of rights to assert any and all claims and defenses by

---

[1] Attached as Exhibit A to this Notice of Removal is a chart listing each plaintiff's address and county of residence, the dealer where the seed was purchased by each plaintiff, and the type of seed used by each plaintiff. This information was gathered from the Complaints filed with the South Carolina Seed Arbitration Committee. Because certain plaintiffs either did not file such a complaint, or did not provide all of the requested information, some of the information is unknown at this time. In any event, the chart demonstrates that over forty-five of the plaintiffs in this action purchased their seed from non-South Carolina residents, and therefore do not have any claims against non-diverse defendants. By way of example, according to the Complaint filed with the South Carolina Seed Arbitration Committee by the first plaintiff named in this Complaint, Wayne Axson, Mr. Axson purchased his seed from UAP Carolina, a seed dealer who is not a resident of South Carolina for diversity purposes. As such, it would appear that Mr. Axson's only claims that could possibly be valid would be against diverse defendants, namely UAP Carolina, Monsanto, Delta and Pine Land Co., and Paymaster Co. Thus, if severed from the improperly joined claims of other plaintiffs, Mr. Axson's case would satisfy the requirements of 28 U.S.C. § 1332 and would therefore be removable under 28 U.S.C. § 1441.

way of answer or counterclaim or otherwise, including, but not limited to, all statutory and contractual rights to seek and enforce arbitration regarding plaintiff's claims.

NELSON MULLINS RILEY & SCARBOROUGH, L.L.P.

By: [signature]

Michael T. Cole
Federal Bar No. 206
John S. Slosson
Federal Bar No. 7862
Liberty Building, Suite 500
151 Meeting Street
Post Office Box 1806 (29402)
Charleston, SC 29401
(843) 853-5200

Carl B. Epps, III
Federal Bar No. 725
Keenan Bldg., Third Floor
1330 Lady Street
Post Office Box 11070 (29211)
Columbia, SC 29201
(803) 799-2000
Attorneys for Defendant Monsanto Company

Charleston, South Carolina
August 28, 2002

WE SO CONSENT

Defendants UAP/GA AG Chem, Inc., d/b/a UAP Carolinas (incorrectly identified as UAP Carolina's, Inc.), Scott Butler, and Reasa Thomas hereby consent to this Notice of Removal filed in *Axson et al. v. Monsanto Co. et al.*, with an express reservation of rights to assert any and all claims and defenses by way of answer or counterclaim or otherwise, including, but not limited to, all statutory and contractual rights to seek and enforce arbitration regarding plaintiff's claims.

NELSON MULLINS RILEY & SCARBOROUGH, L.L.P.

By: [signature]

Michael T. Cole
Federal Bar No. 206
Jane Thompson Davis
Federal Bar No. 1048
Liberty Building, Suite 500
151 Meeting Street
Post Office Box 1806 (29402)
Charleston, SC 29401
(843) 853-5200

Carl B. Epps, III
Federal Bar No. 725
Keenan Bldg., Third Floor
1330 Lady Street
Post Office Box 11070 (29211)
Columbia, SC 29201
(803) 799-2000

Attorneys for UAP/GA AG Chem Inc., d/b/a UAP Carolinas, Scott Butler, and Reasa Thomas

Charleston, South Carolina

August 28, 2002

WE SO CONSENT

Defendants Delta and Pine Land Company, Paymaster Seed Co., Mixon Seed Co., Scott Price, Helena Chemical Company, Carolina Eastern, Inc., Holly Hill Farm Center, North Farm Center, Carolina Eastern-Warehouse, Inc., Carolina Eastern-Trenton, and Carolina Easten-Scranton hereby consent to this Notice of Removal filed in *Axson et al. v. Monsanto Co. et al.*, with an express reservation of rights to assert any and all claims and defenses by way of answer or counterclaim or otherwise, including, but not limited to, all statutory and contractual rights to seek and enforce arbitration regarding plaintiff's claims.

BARNWELL, WHALEY, PATTERSON & HELMS

By: M Dawes Cooke, Jr.

M. Dawes Cooke, Jr.
Federal Bar No. 288
P.O. Drawer H
Charleston, SC 29402
843-577-7700

Attorneys for Delta and Pine Land Company, Paymaster Seed Co., Mixon Seed Co., Scott Price, Helena Chemical Company, Carolina Eastern, Inc., Holly Hill Farm Center, North Farm Center, Carolina Eastern-Warehouse, Inc., Carolina Eastern-Trenton, and Carolina Easten-Scranton

August 28, 2002

# EXHIBIT A

# Exhibit A

| | GROWER | ADDRESS | COUNTY | DEALER | SEED TYPES |
|---|---|---|---|---|---|
| 1 | AXSON, WAYNE | 1777 NINETY SIX ROAD<br>NORTH, SC 29112 | Orangeburg | UAP | 458 DPL BRR |
| 2 | BARNES, J. W. | RT. 1, BOX 197A<br>EHRHARDT, SC 29081 | Orangeburg | Carolina Eastern | 655 DPL<br>458 DPL |
| 3 | BARR, GLENN | 1122 WILLOW SWAMP RD.<br>NORWAY, SC 29113 | Orangeburg | UAP, Southern States | 655 DPL<br>90 DPL<br>33B DPL |
| 4 | BARR, O'NEAL | 7691 NEESES HWY<br>SPRINGFIELD, SC 29146 | Orangeburg | UAP | 655 DPL<br>458 DPL |
| 5 | BATES, K. B. | P.O. BOX 146<br>NORWAY, SC 29113 | Orangeburg | Mixon, UAP | 655 DPL<br>1220 DPL<br>90 DPL<br>436 DPL |
| 6 | BENNETT, E. S. | P.O. BOX 85<br>CAFE, SC 29038 | Orangeburg | Helena, UAP | 1220<br>655<br>458 |
| 7 | BICKLEY, KEN | 5462 OLD HIGHWAY #6<br>ELLOREE, SC 29047 | Orangeburg | Helena, UAP,<br>Southern States | 655<br>458<br>5415 RR |
| 8 | BICKLEY FARMS, INC. | 5462 OLD HIGHWAY #6<br>ELLOREE, SC 29047 | Orangeburg | Helena, UAP,<br>Southern States | 655<br>458<br>5415 RR |
| 9 | BISHOP, BRUCE | RT. 1, BOX 5<br>EHRHARDT, SC 29081 | Orangeburg | Carolina Eastern | 655 DPL<br>458DPL |
| 10 | BOLEN, NORMAN | P.O. BOX 175<br>BARNWELL, SC 29812 | Barnwell | UAP | 458 DPL<br>655DPL |
| 11 | BOWERS, BUD | BOX 110<br>LURAY, SC 29932 | Hampton | UAP, Helena | 655 DPL<br>458 DPL<br>90 DPL<br>428 DPL |
| 12 | BOWERS, CORRIN | BOX 110<br>LURAY, SC 29932 | Hampton | UAP, Helena | 655 DPL<br>458 DPL<br>90 DPL<br>428 DPL |
| 13 | BROWN, CHARLES RAY | | Orangeburg | UAP | 655 DPL<br>33B DPL<br>90 DPL |

| | GROWER | ADDRESS | COUNTY | DEALER | SEED TYPES |
|---|---|---|---|---|---|
| | | | | | 458 DPL |
| 14 | BROWN, J. EDWARD | 1890 WILLOW SWAMP ROAD<br>NORWAY, SC 29113 | Orangeburg | Southern States | 458 DPL RR/BG<br>655 DPL RR/BG<br>90 DPL RR<br>425 DPL RR<br>125 SG R/B<br>1220 PM B/G-RR |
| 15 | BROWN, J.N. | 1890 WILLOW SWAMP ROAD<br>NORWAY, SC 29113 | Orangeburg | Southern States | 458 DPL RR/BG<br>655 DPL RR/BG<br>90 DPL RR<br>425 DPL RR<br>125 SG R/B<br>1220 PM B/G-RR |
| 16 | BROWN, GERRY H. | 1890 WILLOW SWAMP ROAD<br>NORWAY, SC 29113 | Orangeburg | Southern States | 458 DPL RR/BG<br>655 DPL RR/BG<br>90 DPL RR<br>425 DPL RR<br>125 SG R/B<br>1220 PM B/G-RR |
| 17 | KIRBY BROWN & SON | P.O. BOX 355<br>SPRINGFIELD, SC 29146 | Orangeburg | UAP | 655 DPL<br>90 DPL<br>33 DPL<br>458 DPL |
| 18 | BULL, W.H. | P.O. BOX 612<br>CAMERON, SC 29030 | Orangeburg | Helena, UAP | 655 DPL<br>5415 DPL<br>458 DPL |
| 19 | BUSH, ASHLEY | RT 1, BOX 74-A<br>ESTILL, SC 29918 | Hampton | UAP, Helena, Mixon | 655 DPL<br>458 DPL |
| 20 | CARSON, JERRY D | POB 91<br>ELLOREE, SC 29047 | Orangeburg | Mixon | 458 DPL<br>1220 PM<br>1215 PM |
| 21 | CARTSEN, CHRIS | | | | |
| 22 | CONE, G.E. | P.O. BOX 535<br>ESTILL, SC 29918 | Hampton | Mixon | 655 DPL<br>90B DPL<br>90R DPL<br>428 DPL |
| 23 | CONNELLY, ROBERT | RT. 1, BOX 93<br>ULMER, SC 29849 | Barnwell | Mixon | 33B DPL B/G<br>5415 DPL |
| 24 | COVINGTON, GREGG | P.O. BOX 57<br>NORWAY, SC 29113 | Orangeburg | UAP | 458 DPL<br>90 DPL<br>450 DPL |
| 25 | CROSBY, ROBERT | RT. 1, BOX 77 | Hampton | Southern States | 655 DPL |

| | GROWER | ADDRESS | COUNTY | DEALER | SEED TYPES |
|---|---|---|---|---|---|
| | | ESTILL, SC 29918 | | | 474 DPL |
| 26 | CULCLASURE, DARGON | RT. 3, BOX 469<br>ST. MATTHEWS, SC 29135 | Calhoun | Carolina Eastern | 655 DPL<br>458 DPL |
| 27 | CUMBEE, MICHAEL | P.O. BOX 25<br>MONETTA, SC 29105 | Aiken | UAP | 989 Fiber Max<br>90 DPL |
| 28 | DANTZLER, D.Z. | | | | |
| 29 | DANTZLER, W.T. | RT. 2, BOX 105<br>CAMERON, SC 29030 | Orangeburg | Helena, UAP | 655 DPL<br>458 DPL<br>315 DPL<br>5415 DPL |
| 30 | DAVIS, CLYDE SR. | 1223 HOMEPLACE RD.<br>SPRINGFIELD, SC 29146 | Orangeburg | UAP | 90 RR<br>5415 RR<br>655 DPL<br>458 DPL<br>409 DPL |
| 31 | DAVIS, CLYDE JR. | | | | |
| 32 | DAVIS, FRANCIS | 4491 NEESES HWY<br>NEESES, SC 29107 | Orangeburg | Helena, Mixon, Carolina Eastern | 655 DPL<br>458 DPL |
| 33 | DAVIS, JOHN O. | 3992 NEESES HWY<br>ORANGEBURG, SC 29115 | Orangeburg | Helena, Mixon, Carolina Eastern | 655 DPL<br>458 DPL |
| 34 | DAVIS, WESLEY O. | 3992 NEESES HWY<br>ORANGEURG, SC 29115 | Orangeburg | Helena, Mixon, Carolina Eastern | 655 DPL<br>458 DPL |
| 35 | DAVIS FARMS | 3992 NEESES HWY<br>ORANGEURG, SC 29115 | Orangeburg | Helena, Mixon, Carolina Eastern | 655 DPL<br>458 DPL |
| 36 | DICK, F.H. | P.O. BOX 175<br>BARNWELL, SC 29812 | Barnwell | UAP | 458 DPL<br>655DPL |
| 37 | DONNELL, A.W. | 1450 BOMETH RD<br>CAFE, SC 29038 | Orangeburg | Southern States | 458 DPL<br>450 DPL<br>455 DPL |
| 38 | JOHN DONNELL FARMS | | | | |
| 39 | DUBOSE, W. M. AND SONS, INC. | P.O. BOX 207<br>MONETTE, SC 29105 | Aiken | Mixon | 436 DPL<br>450 DPL<br>458 DPL<br>90 DPL |
| 40 | FENDER, JAMES E. | P.O. BOX 191<br>REEVESVILLE, SC 29471 | Dorchester | Mixon | 655 DPL<br>458 DPL<br>33B DPL |

| | GROWER | ADDRESS | COUNTY | DEALER | SEED TYPES |
|---|---|---|---|---|---|
| | | | | | 5415 DPL<br>1220 |
| 41 | FOGLE, BRYAN | | | | |
| 42 | FUNCHESS, DON | 507 FUNCHESS RD.<br>ROWESVILLE, SC 29133 | Orangeburg | Helena, UAP | 458 DPL<br>655 DPL |
| 43 | FUNCHESS, MAYNARD | 507 FUNCHESS RD.<br>ROWESVILLE, SC 29133 | Orangeburg | Helena, UAP | 458 DPL<br>655 DPL |
| 44 | FUTRICK, CHRIS | 1521 PROVIDENCE RD.<br>ORANGEBURG, SC 29118 | Orangeburg | Helena | 655 DPL BG/RR<br>458 DPL BG/RR<br>125 Suregrow BG/RR |
| 45 | GARRICK, DON | 4477 SLABLARDING RD.<br>COPE, SC 29038 | Orangeburg | Helena, UAP | 458 BG RR<br>655 BG RR |
| 46 | GARRICK FARMS, INC. | 4477 SLABLARDING RD.<br>COPE, SC 29038 | Orangeburg | Helena, UAP | 458 BG RR<br>655 BG RR |
| 47 | GINN, LONNIE | RT 1, BOX 475<br>VARNVILLE, SC 29944 | Hampton | UAP, Mixon | 655 DPL<br>458 DPL<br>90R DPL |
| 48 | GINN, VON L. | RT 1, BOX 475<br>VARNVILLE, SC 29944 | Hampton | UAP. Mixon | 655 DPL<br>458 DPL<br>90R DPL |
| 49 | GRUBER, STANLEY | | Dorchester | Mixon | 458 DPL<br>1220 PM |
| 50 | GUNTER, ANDY | 332 PATTEN RD.<br>REEVESVILLE, SC 29471 | Orangeburg | UAP | 655 DPL<br>458 DPL |
| 51 | GUNTER, RYAN | 332 PATTEN RD.<br>REEVESVILLE, SC 29471 | Orangeburg | UAP | 655 DPL<br>458 DPL |
| 52 | HAM BONE FARMS, INC. | 554 DURHAM'S CORNER RD.<br>REEVESVILLE, SC 29471 | Orangeburg | Mixon | 458 DPL<br>33B DPL |
| 53 | HAIGLER, HAYNE | RT. 2, BOX 68<br>CAMERON, SC 29030 | Orangeburg | Helena | 655 DPL<br>458 DPL |
| 54 | HIERS, JOHN | RT 1, BOX 99<br>HAMPTON, SC 29924 | Hampton | Helena, Mixon | 655 DPL<br>458 DPL |
| 55 | HOLMEN, W. CAPERS | RT. 1, BOX 109<br>CAMERON, SC 29030 | Orangeburg | Carolina Eastern | 5690 DPL RR<br>458 DPL B/RR<br>655 DPL B/RR |
| 56 | HOLMES, HAMP | P.O. BOX 40<br>TRENTON, SC 29847 | Edgefield | Mixon | 90 DPL<br>585 Suregro<br>5415 DPL |

| | GROWER | ADDRESS | COUNTY | DEALER | SEED TYPES |
|---|---|---|---|---|---|
| 57 | HUGHES, LEE | | | | |
| 58 | HUTTO, R. BARRY | 160 SHULER BELT ROAD<br>HOLLY HILL, SC 29059 | Orangeburg | Holly Hill | 458 BG/RR<br>655 BG/RR<br>5690 RR<br>90 RR |
| 59 | JARRELL, B.L. | RFD 1, BOX 211<br>ESTILL, SC 29918 | Hampton | Mixon | 655 DPL<br>90 DPL |
| 60 | JARRELL, DAVID | RT. 1, BOX 116<br>ESTILL, SC 29918 | Hampton | Helena | 425 DPL<br>458 DPL |
| 61 | JARRELL, JERRY | RT. 2, BOX 27<br>ESTILL, SC 29918 | Hampton | Mixon | 655 DPL<br>90 DPL |
| 62 | JARRELL, TONY | P.O. BOX 285<br>GIFFORD, SC 29923 | Hampton | Mixon, UAP | 655 DPL<br>90 DPL<br>458 DPL |
| 63 | JARRELL, WES | RT. 1, BOX 569<br>VARNVILLE, SC 29944 | Dorchester | Mixon | 655 DPL<br>428 DPL<br>458 DPL<br>90 DPL |
| 64 | JEFFCOAT, CAROLE F. | 1928 WOODFORD DR.<br>NORTH, SC 29112 | Orangeburg | Carolina Eastern | 655 DPL<br>90 DPL<br>458 DPL |
| 65 | JEFF COAT FARMS | 1928 WOODFORD DR.<br>NORTH, SC 29112 | Orangeburg | Carolina Eastern | 655 DPL<br>90 DPL<br>458 DPL |
| 66 | JONES, MICKEY | | | | |
| 67 | KINARD, MARK | RT. 1, BOX 168<br>EHRHARDT, SC 29081 | Bamberg | Carolina Eastern | 655 DPL<br>425 DPL<br>458 DPL |
| 68 | KYM FARMS, INC. | 5428 OLD HWY # 6<br>ELLORREE, SC 29041 | Orangeburg | Helena, UAP,<br>Southern States | 450 DPL<br>458 DPL<br>5415 DPL |
| 69 | LAFITTE, CHARLES | P.O. BOX 158<br>HAMPTON, SC 29924 | Hampton | Mixon | 655 DPL<br>458 DPL<br>5690 DPL |
| 70 | LUCAS, JEFF | 1183 FLATMEADS ROAD<br>REEVESVILLE, SC 29471 | Orangeburg | Mixon | 458<br>501 |
| 71 | LYONS, HUGO | RT. 1, BOX 108<br>ELLOREE, SC 29047 | Orangeburg | Carolina Eastern,<br>Mixon, and Helena | 655 DPL<br>33B DPL<br>90 DPL<br>458 DPL |

| | GROWER | ADDRESS | COUNTY | DEALER | SEED TYPES |
|---|---|---|---|---|---|
| 72 | McALHANEY, DANIEL | 104 HISHEADS CIRCLE<br>BAMBERG, SC 29003 | Bamberg | Mixon | 458 DPL<br>655 DPL |
| 73 | McALHANEY, HARRY | 1797 McALHANEY ROAD<br>BRANCHVILLE, SC 29432 | Orangeburg | Mixon | 458 DPL<br>1560 PM |
| 74 | McALHANEY, OTIS | 1797 McALHANEY ROAD<br>BRANCHVILLE, SC 29432 | Orangeburg | Mixon | 458 DPL<br>1560 PM |
| 75 | McALHANEY, SUBLETT | P.O. BOX 44<br>BRANCHVILLE, SC 29432 | Orangeburg | Mixon | 655<br>458<br>5415 |
| 76 | McCLURE, RONNIE | 3434 REEVESVILLE RD.<br>REEVESVILLE, SC 29471 | Orangeburg | Mixon | 655 DPL<br>458 DPL<br>5415 DPL<br>33B DPL |
| 77 | McKENZIE, DAVID | RT 1, BOX 109A<br>GARNETT, SC 29922 | Hampton | Mixon | 655 DPL<br>90 DPL<br>33B DPL |
| 78 | McLAURIN, HUGH C., III | P.O. BOX 160,<br>2518 W. CLEVELAND ST.<br>ELLOREE, SC 29047 | Orangeburg | Mixon | 655 DPL B/RR<br>458 DPL B/RR<br>90 DPL RR |
| 79 | McMILLAN, CHARLES R. | | | | |
| 80 | McMILLAN, CLARENCE | RFD #1, BOX 51<br>BRUNSON, SC 29911 | Hampton | UAP | 655 DPL<br>90 DPL<br>458 DPL |
| 81 | McMILLAM, JOHNNY | P.O. BOX 118<br>LODGE, SC 29082 | Colleton | Helena | 425 DPL<br>458 DPL |
| 82 | MOLE, JIMMY | RT. 1, BOX 106, McMILLAN RD.<br>BRUNSON, SC 29911 | Hampton | UAP, Helena | 655 DPL<br>458 DPL |
| 83 | MOLE, WARREN | RT. 1, BOX 106, McMILLAN RD.<br>BRUNSON, SC 29911 | Hampton | UAP, Helena | 655 DPL<br>458 DPL |
| 84 | MOOER, ROLAND Q. | P.O. BOX 730<br>SANTEE, SC 29142 | Orangeburg | Holly Hill | 458 BG/RR<br>655 BG/RR<br>90 RR<br>425 RR |
| 85 | MORRIS, DONNIE | | | | |
| 86 | NETTLES, J. L. | P.O. BOX 1333 | Barnwell | Carolina Eastern | 458 DPL |

| | GROWER | ADDRESS | COUNTY | DEALER | SEED TYPES |
|---|---|---|---|---|---|
| | | BARNWELL, SC 29812 | | | 436 DPL |
| 87 | NIMMONS, JESSE | RT 2, BOX 28<br>BAMBERG, SC 29003 | Bamberg | | 5690 DPL RR<br>90 DPL RR<br>458 DPL BR<br>125 Suregrow BR |
| 88 | NIX, GENE | P.O. BOX 125<br>ELKO, SC 29826 | Barnwell | Helena | 90 DPL RR<br>458 DPL<br>655 DPL |
| 89 | GENE NIX FARMS, INC. | P.O. BOX 125<br>ELKO, SC 29826 | Barnwell | Helena | 90 DPL RR<br>458 DPL<br>655 DPL |
| 90 | OTT, HARRY | RT. 1, BOX 524<br>ST. MATTHEWS, SC 29135 | Calhoun | Helena, Carolina Eastern | 655 DPL<br>458 DPL |
| 91 | OTT, MARVIN, ESTATE OF | | Orangeburg | Mixon | 655 DPL<br>5690 DPL |
| 92 | PATTERSON, J. O. | ROUTE 1, BOX 179<br>GARNETT, SC 29922 | Hampton | Mixon | 655 DPL<br>90 DPL<br>458 DPL |
| 93 | PERROW, MOSS H., JR. | ROUTE 1, BOX 113<br>CAMERON, SC 29030 | Orangeburg | Carolina Eastern | 655 DPL<br>450 DPL<br>458 DPL |
| 94 | PLATTS, CARL | RT. 1, BOX 86<br>BRUNSON, SC 29911 | Hampton | UAP, Mixon | 655 DPL<br>458 DPL |
| 95 | POOL, AUBREY | 1806 SWANSEA ROAD<br>SWANSEA, SC 29160 | Lexington | Mixon | 90 DPL<br>655 DPL<br>458 DPL |
| 96 | POOLE, KEITH | 1806 SWANSEA RD.<br>SWANSEA, SC 29160 | Lexington | Mixon | 90 DPL |
| 97 | PRIESTER, MARK | RT 1, BOX 121<br>ESTILL, SC 29918 | Hampton | Mixon | 655 DPL<br>33B DPL<br>35B DPL<br>90 DPL<br>458 DPL |
| 98 | RAHN, LARRY | 1737 ADRAH CHURCH RD<br>ISLANDTON, SC 29929 | Colleton | UAP, Mixon | 655 DPL<br>458 DPL |
| 99 | RAHN, VERNON | 1737 ADRAH CHURCH RD<br>ISLANDTON, SC 29929 | Colleton | UAP, Mixon | 655 DPL<br>458 DPL |
| 100 | REEVES, CHARLES | | | | |
| 101 | REEVES, JEFF | RT. 1, BOX 158-A | | UAP | 458 DPL<br>655 DPL |

| | GROWER | ADDRESS | COUNTY | DEALER | SEED TYPES |
|---|---|---|---|---|---|
| | | ELBREE, SC 29047 | Orangeburg | | 90 DPL RR |
| 102 | RILEY, ROBERT H., JR. | | Orangeburg | Mixon | 655 DPL<br>458 DPL |
| 103 | RILEY, TILDEN F., III | 299 TILDEN RD.<br>ORANGEBURG, SC 29115 | Orangeburg | Mixon | 655 DPL<br>458 DPL<br>1220 PM |
| 104 | RIVER, CARNELL | P.O. BOX 293<br>HAMPTON, SC 29924 | Hampton | Mixon | 655 DPL<br>450 DPL<br>90 DPL<br>458 DPL |
| 105 | RIZER, MARION | | | | |
| 106 | RIZER, PHILLIP | 2398 CONFEDERATE HWY<br>LODGY, SC 29082 | Colleton | Helena | 655 DPL |
| 107 | RIZER FAMS | 2398 CONFEDERATE HWY<br>LODGY, SC 29082 | Colleton | Helena | 655 DPL |
| 108 | ROUSE, EMMETT | P.O. BOX 181<br>LURAY, SC 29932 | Hampton | Helena, UAP | 655 DPL<br>35B DPL<br>90 DPL RR<br>458 DPL |
| 109 | SALLEY, H. B. | BOX 433<br>SALLEY, SC 29137 | Aiken | UAP | 655 DPL<br>458 DPL |
| 110 | SANDERS, SANDY | 4610 GOVAN HWY.<br>OLAR, SC 29843 | Bamberg | Carolina Eastern | 458 DPL<br>436 DPL |
| 111 | SHIRER, J. HOWARD | 3222 FOXFIRE LANE<br>ORANGEBURG, SC 29118 | Orangeburg | Mixon | 655 DPL<br>458 DPL |
| 112 | SHIRER, MICHAEL P. | RT. 1, BOX 591<br>CAMERON, SC 29030 | Orangeburg | Helena | 5690<br>655<br>458 |
| 113 | SHULER, JACOB B., JR. | 303 JACKSON BELD RD.<br>HOLLY HILL, SC 29059 | Orangeburg | Holly Hill | 655 DPL B/RR<br>458 DPL<br>5690 DPL RR |
| 114 | TED SHULER AND SONS | 303 JACKSON BELD RD.<br>HOLLY HILL, SC 29059 | Orangeburg | UAP, Holly Hill | 655 DPL<br>458 DPL<br>1220 PM |
| 115 | SMITH, JAMES | 1380 STOCKWELL RD.<br>NEESES, SC 29107 | Orangeburg | UAP | 655 DPL |
| 116 | SOLOMONS, BEN, ESTATE OF | P.O. BOX 492<br>ALLENDAB, SC 29810 | Allendale | Mixon, Helena | 655 DPL<br>458 DPL<br>5415 DPL<br>33B DPL |
| | STANLEY, WILLIAM | P.O. BOX 81 | | Carolina Eastern | 655 DPL |

| | GROWER | ADDRESS | COUNTY | DEALER | SEED TYPES |
|---|---|---|---|---|---|
| 117 | C. | EHRHARDT, SC 29081 | Bamberg | | 458 DPL |
| 118 | STILL, JOHN T. | 53 WALNUT ST.<br>BLACKVILLE, SC 29817 | Barnwell | UAP | 5690 DPL RR<br>458 DPL |
| 119 | STOWE, THOMAS R. | RT.3, BOX 475<br>ST. MATTHEWS, SC 29135 | Calhoun | Helena | 429 DPL RR<br>1244 PM RR<br>1220 PM BG/RR |
| 120 | TROWELL, HUGHSIE | P.O. BOX 145<br>FURMAN, SC 29921 | Hampton | Mixon | 655 DPL<br>5690 DPL<br>90 DPL<br>458 DPL |
| 121 | ULMER, DENNIS R. | 3512 CONFEDERATE HWY<br>LODGE, SC 29082 | Colleton | Carolina Eastern | 655 DPL<br>458 DPL |
| 122 | ULMER, LEWIS J. | RT. 2, BOX 160<br>CAMERON, SC 29030 | Orangeburg | Carolina Eastern | 90 RR<br>655 |
| 123 | WEATHERS, JAMES H. | 373 COWTAIL ROAD<br>ST. GEORGE, SC 29477 | Dorchester | Mixon | 458 DPL<br>33B DPL<br>1244 PM |
| 124 | WEATHERS, JODY | 373 COWTAIL ROAD<br>ST. GEORGE, SC 29477 | Dorchester | Mixon | 1244 PM<br>33 DPL B/R |
| 125 | WIDENER, RICHARD L. | 505 SNAPPER RD.<br>BLACKVILLE, SC 29817 | Barnwell | | 458 DPL<br>450 DPL |
| 126 | WIENGES, JOHN | RT. 3, BOX 216<br>ST. MATTHEWS, SC 29135 | Calhoun | Helena, Carolina Eastern, UAP | 458 DPL<br>450 DPL |
| 127 | O.H. WIENGES & SON | RT. 3, BOX 216<br>ST. MATTHEWS, SC 29135 | Calhoun | Helena, Carolina Eastern, UAP | 458 DPL<br>450 DPL |
| 128 | WILLIAMS, BILLY | | | | |
| 129 | WOOTEN, JOESPH E. | ROUTE 1, BOX 115-B<br>ESTILL, SC 29918 | Hampton | Mixon | 655 DPL |

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF HAMPTON. | ) | CIVIL ACTION NO.: 02-CP-25-421 |

Wayne Axson, J.W. Barnes, O'Neal Barr, Norman Bolen, F.H. Dick, C.R. Brown, Kirby Brown & Son, Gregg Covington, Michael Cumbee, Ryan Gunter, Andy Gunter, Mark Kinard, Clarence McMillan, Donnie Morris, J.L. Nettles, Jeff Reeves, H.B. Salley, Sandy Sanders, James Smith, John T. Still, Richard Widener, Glenn Barr, K.B. Bates Von L. Ginn, Lonnie Ginn, Tony Jarrell, Carl Platts, Vernon Rahn, Larry Rahn, Billy Williams, E.S. Bennett, Bud Bowers, Corrin Bowers, W.H. Bull, W.T. Dantzler, Don Funchess, Maynard Funchess, Garrick Farms, Inc., Don Garrick, Warren Mole, Jimmy Mole, Emmett Rouse, Bickley Farms, Inc., Ken Bickley, Bruce Bishop, Dargon Culclasure W. Capers Holmen, Jeff Coat Farms, Carole F. Jeffcoat, Roland Q. Mooer, Jessie Nimmons, Moss H. Perrow, Jr., Jacob B. Shuler, Jr., Ted Shuler and Sons, William C. Stanley, Dennis R. Ulmer, Lewis J. Ulmer, J. Edward Brown, J.N. Brown, Gerry H. Brown, Robert Crosby, John Donnell Farms, A.W. Donnell, Jerry D. Carson, G.E. Cone, Robert Connelly, W.M. DuBose & Sons, Inc., James E. Fender, Bryan Fogle, Stanley Gruber, Ham Bone Farms, Inc, Charles Reeves, Hamp Holmes, B.L. Jarrell, Jerry Jarrell, Wes Jarrell, Charles Laffitte, Jeff Lucas, Daniel McAlhaney, Otis McAlhaney, Harry McAlhaney, Sublett McAlhaney, Ronnie McClure, David McKenzie, Hugh C. McLauren, III, Charles R. McMillan, J.O. Patterson, Keith Poole, Mark Priester, Robert H. Riley, Jr., Tilden F. Riley, III, Carnell River, J. Howard Shirer, Estate of S. Ben Solomons, Hughsie Trowell, James H. Weathers, Jody Weathers, John Wienges, O.H. Wienges & Son, Joseph E. Wooten, Ashley Bush, Chris Carsten, D.Z. Dantzler, R. Barry Hutto, Clyde Davis, Sr.,

***SUMMONS***
***Defective Cotton Seed***
**JURY ACTION**

Clyde Davis, Jr., Francis Davis, John O. Davis, Chris Furtick, Hayne Haigler, David Jarrell, Hugo Lyons, Johnny McMillam, Gene Nix, Gene Nix Farms, Inc., Estate of Mavin Ott, Harry Ott, Rizer Farms, Marion Rizer, Phillip Rizer, Michael P. Shirer, Thomas R. Stowe, Wesley O. Davis, Davis Farms, John Heirs, Lee Hughs, Mickey Jones, KYM Farms, Inc., and Aubrey Pool, )

Plaintiffs, )

Vs. )

Monsanto Co., Delta and Pine Land Co., Paymaster Seed Co., UAP Carolinas, Inc., and , Mixon Seed Co., Scott Butler, Scott Price, Reasa Thomas, Helena Chemical Co., Carolina Eastern, Inc., Holly Hill Farm Center, North Farm Center, Carolina Eastern Warehouse, Inc., Carolina Eastern-Trenton and Carolina Eastern-Scranton, )

Defendants. )

TO: DEFENDANTS AS NAMED ABOVE.

YOU ARE HEREBY SUMMONED and required to answer the Complaint here in, a copy of which is herewith served upon you, and to serve a copy of your answer to said Complaint on the subscribed at their office, 307 First Street, East, Hampton, South Carolina 29924 within thirty (30) days after the service hereof; exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in this Complaint.

STATE OF SOUTH CAROLINA) ) IN THE COURT OF COMMON PLEAS
)
COUNTY OF HAMPTON. ) CIVIL ACTION NO.: 02-CP-25-421

Wayne Axson, J.W. Barnes, O'Neal Barr, Norman Bolen, F.H. Dick, C.R. Brown, Kirby Brown & Son, Gregg Covington, Michael Cumbee, Ryan Gunter, Andy Gunter, Mark Kinard, Clarence McMillan, Donnie Morris, J.L. Nettles, Jeff Reeves, H.B. Salley, Sandy Sanders, James Smith, John T. Still, Richard Widener, Glenn Barr, K.B. Bates Von L. Ginn, Lonnie Ginn, Tony Jarrell, Carl Platts, Vernon Rahn, Larry Rahn, Billy Williams, E.S. Bennett, Bud Bowers, Corrin Bowers, W.H. Bull, W.T. Dantzler, Don Funchess, Maynard Funchess, Garrick Farms, Inc., Don Garrick, Warren Mole, Jimmy Mole, Emmett Rouse, Bickley Farms, Inc., Ken Bickley, Bruce Bishop, Dargon Culclasure W. Capers Holmen, Jeff Coat Farms, Carole F. Jeffcoat, Roland Q. Mooer, Jessie Nimmons, Moss H. Perrow, Jr., Jacob B. Shuler, Jr., Ted Shuler and Sons, William C. Stanley, Dennis R. Ulmer, Lewis J. Ulmer, J. Edward Brown, J.N. Brown, Gerry H. Brown, Robert Crosby, John Donnell Farms, A.W. Donnell, Jerry D. Carson, G.E. Cone, Robert Connelly, W.M. DuBose & Sons, Inc., James E. Fender, Bryan Fogle, Stanley Gruber, Ham Bone Farms, Inc, Charles Reeves, Hamp Holmes, B.L. Jarrell, Jerry Jarrell, Wes Jarrell, Charles Laffitte, Jeff Lucas, Daniel McAlhaney, Otis McAlhaney, Harry McAlhaney, Sublett McAlhaney, Ronnie McClure, David McKenzie, Hugh C. McLauren, III, Charles R. McMillan, J.O. Patterson, Keith Poole, Mark Priester, Robert H. Riley, Jr., Tilden F. Riley, III, Carnell River, J. Howard Shirer, Estate of S. Ben Solomons, Hughsie, Trowell, James H. Weathers, Jody Weathers, John Wienges, O.H. Wienges & Son, Joseph E. Wooten, Ashley Bush, Chris Carsten, D.Z. Dantzler, R. Barry Hutto, Clyde Davis, )

***COMPLAINT***
*Defective Cotton Seed*
**JURY ACTION**

Sr.,Clyde Davis, Jr., Francis Davis, John O. Davis, Chris Furtick, Hayne Haigler, David Jarrell, Hugo Lyons, Johnny McMillam, Gene Nix, Gene Nix Farms, Inc., Estate of Mavin Ott, Harry Ott, Rizer Farms, Marion Rizer, Phillip Rizer, Michael P. Shirer, Thomas R. Stowe,Wesley O. Davis, Davis Farms, John Heirs, Lee Hughs, Mickey Jones, KYM Farms, Inc., and Aubrey Pool,

Plaintiffs,

Vs.

Monsanto Co., Delta and Pine Land Co., Paymaster Seed Co., UAP Carolinas, Inc., and , Mixon Seed Co., Scott Butler, Scott Price, Reasa Thomas, Helena Chemical Co., Carolina Eastern, Inc., Holly Hill Farm Center, North Farm Center, Carolina Eastern Warehouse, Inc., Carolina Eastern-Trenton and Carolina Eastern-Scranton,

Defendants.

Plaintiffs alleges:

## FOR A FIRST THEORY OF RECOVERY

1. The defendants, UAP Carolinas, Inc. Delta and Pine Land Company, Paymaster Seed Company and Monsanto Company are corporate residents of Hampton County, owning property and transacting business within the County; that Helena Chemical Co., is foreign corporation transacting business in South Carolina; Scott Butler, Scott Price, Reasa Thomas, Carolina Eastern, Inc., (Carolina Eastern-Trenton, Carolina Eastern Warehouse, Holly Hill Farm Supply, North Farm Supply, Carolina Eastern-Scranton,

Carolina Eastern-Trenton) and Mixon Seed Co. are residents of the State of South Carolina.

2. The plaintiffs are South Carolina farmers; prior to the planting of the 1999 cotton crop, the plaintiffs purchased cotton seed through various seed dealers and representatives working for or serving as agents of UAP Carolinas, Carolina Eastern, Carolina Eastern-Trenton & Scranton, Carolina Eastern Warehouse, Holly Hill Farm Supply, North Farm Supply, Mixon Seed Co., Helena Chemical Co.; the defendants' representatives promoted and represented the cotton seed being sold by the defendants as being of the highest quality and capable producing better than average quantity and quality cotton fiber; the seed purchased by the plaintiffs was produced by Delta and Pine Land Company and Paymaster Seed Company and incorporated technology owned and developed by Monsanto Company; Monsanto also produced and distributed Round-Up which was utilized on much of the crop which is the subject of this lawsuit.

3. The cotton seed sold by the defendants was defective in that the seed grew plants that produced cotton bolls, which contained immature, defective and rotten seed in the seed bolls. The defective bolls produced cotton bolls that were hard locked which in turn caused a low turn out as well as short staple cotton fiber; that the cotton fiber that was harvested from the crop was of an inferior grade and suffered abnormal deductions.

4. The cotton seed sold by the defendants was not merchantable and as such the sale of the defective seed by the defendants breached expressed and implied warranties.

5. The plaintiffs by reason of the sale of the defective cotton seed suffered damage to his cotton crop, which resulted in them to lose revenues which he would have received had they sold merchantable seed.

**FOR A SECOND THEORY OF RECOVERY**

6. The allegations of the First Theory of Recovery are incorporated hereinafter as if rewritten. At all times relevant, the defendants, Delta and Pine Land Co., Paymaster Co. and Monsanto Co. owed a duty of care to the plaintiff.

7. The defendants were negligent and reckless and breached their duty of care in the following ways:

a. In failing to properly inspect the production fields used to produce the cotton seed they produced and sold.

b. In failing to properly test their seed prior to placing its seed on the market.

c. In failing to properly warn cotton growers of the dangers and risks associated with the defective seed.

d. In failing to adequately train or supervise its agents or employees in the marketing and sale of the defective seed.

e. In failing to recall the defective seed.

f. In failing to adequately or appropriately engineer, produce, market and sell the defective seed.

8. The defendants' acts and omissions described in this complaint were carried out intentionally, willfully or with a reckless disregard for the rights and property of the plaintiff.

**JURY TRIAL DEMANDED**

9. The plaintiff demands a jury trial.

WHEREFORE, the plaintiff prays for judgment for actual damages, punitive damages and cost of this action.

PETERS, MURDAUGH, PARKER,
ELTZROTH & DETRICK, P.A.

By:__________________________

JOHN E. PARKER, ESQ.
MARK D. BALL, ESQ.
307 FIRST STREET EAST
POST OFFICE BOX 457
HAMPTON, SC 29924
(803) 943-2111

July 24, 2002.

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

In re: DIET DRUGS (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation
Maggie M. CHANEY, et. al.
v.
GATE PHARMACEUTICALS, et. al.

No. Civ.A. 98-20478, 1203.

July 16, 1999.

F. Hilton-Green Tomlinson, Pritchard Mccall & Jones, Birmingham, AL, Arnold Levin, Levin, Fishbein, Sedran & Berman, Philadelphia, PA, George M. Fleming, Houston, TX, James L. Doyle, II, Rand P. Nolen, Fleming, Hovenkamp and Grayson, P.C., Houston, TX, for Maggie M. Chaney, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George M. Fleming, James L. Doyle, II, Rand P. Nolen, (See above), for Betty J. Williams, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George M. Fleming, James L. Doyle, II, Rand P. Nolen, (See above), for Leroy T. Trotter, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George M. Fleming, James L. Doyle, II, Rand P. Nolen, (See above), for John E. Reed, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George M. Fleming, James L. Doyle, II, Rand P. Nolen, (See above), for James F. Barthel, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George M. Fleming, James L. Doyle, II, Rand P. Nolen, (See above), for Virginia Ann Hopps, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George M. Fleming, James L. Doyle, II, Rand P. Nolen, (See above), for Virginia Hassell, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George M. Fleming, James L. Doyle, II, Rand P. Nolen, (See above), for Evelyn Turner, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George M. Fleming, James L. Doyle, II, Rand P. Nolen, (See above), for Deborah Saunders, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George M. Fleming, James L. Doyle, II, Rand P. Nolen, (See above), for Catherine Herman, Plaintiff.

F. Hilton-Green Tomlinson, Arnold Levin, George M. Fleming, James L. Doyle, II, Rand P. Nolen, (See above), for Mary C. Smith, Plaintiff.

James C. Barton, Jr., Johnston, Barton, Proctor, Swedlaw and Naff, Birmingham, AL, for Gate Pharmaceuticals, a division of Teva Pharmaceuticals, USA., Inc., Defendant.

Lawrence B. Clark, Lange, Simpson, Robinson & Somerville, Birmingham, AL, for Smithkline Beecham Corporation, Defendant.

E. Ann MC Mahan, Spain and Gillon, Birmingham, AL, for Jones Medical Industries, Inc., f/k/a Abana Pharmaceuticals, Inc., Defendant.

J. Allen Sydnor, Jr., Birmingham, AL, for Richwood Pharmaceuticals Company, Inc., Defendant.

Katharine A. Weber, Maynard, Cooper and Gale, Birmingham, AL, Ellen Steury, Arnold & Porter, Washington, DC, Steven H. Bergman, Arnold and Porter, Los Angeles, CA, Tony G. Miller, Maynard, Cooper and Gale, Birmingham, AL, Maibeth J. Porter, Maynard, Cooper & Gale, P. C., Birmingham, AL, Steven P. Lockman, Arnold & Porter, Washington, DC, for A.H. Robins Company, Incorporated, Defendant.

Katharine A. Weber, Ellen Steury, Steven H. Bergman, Tony G. Miller, Maibeth J. Porter, Steven P. Lockman, for Wyeth-Ayerst Laboratories, Division of American Home Products Corporation, Defendant.

Labella S. Alvis, Sharon D. Stuart, Rives and Peterson, Birmingham, AL, Thomas W. Christian, Rives and Peterson, Birmingham, AL, for Interneuron Pharmaceuticals, Inc., Defendant.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Larry W. Harper, Karen Walker Casey, Porterfield Harper & Mills PA, Birmingham, AL, for Ion Laboratories, Inc., Defendant.

Samuel H. Franklin, Lightfoot, Franklin, White and Lucas, Birmingham, AL, Harlan I. Prater, IV, Robin H. Graves, Lee M. Hollis, Lightfoot, Franklin & White, Birmingham, AL, for Medeva Pharmaceuticals, Inc., Defendant.

Steven A. Stadtmauer, Lester, Schwab, Katz, & Dwyer, New York, NY, for Goldline Laboratories, Inc., Defendant.

Emily Sides Bonds, Helen C. Foster, Walston, Wells, Anderson & Bains, Birmingham, AL, for Qualitest Pharmaceuticals Inc., Defendant.

Steven A. Stadtmauer, (See above), for Zenith Goldline Pharmaceuticals, Inc., Defendant.

Emily Sides Bonds, Helen C. Foster, (See above), for United Research Laboratories Inc., Defendant.

Denise M. Smith, Benesch, Friedlander, Coplan, and Aronoff, Cincinnati, OH, for Shire Richwood Inc., Defendant.

Frank Chester Woodside, Cincinnati, OH, James W. Gewin, Bradley, Arant, Rose and White, Birmingham, AL, for Modern Wholesale Drug Co. Inc., f/k/a Rugby Laboratories Inc., Defendant.

Michael K. Choy, John W. Scott, Haskell, Slaughter, Young, Johnston and Gallion, Birmingham, AL, for Geneva Pharmaceuticals, Inc., Defendant.

Gary B. Cutler, Independence Square West, Phila, PA, Nessa B. Math, Margolis, Edelstein and Scherlis, Phila, PA, William C. Wood, Norman, Fitzpatrick, Wood, Parker and Kendrick, Birmingham, AL, for Camall Company, Defendant.

Lawrence B. Clark, (See above), for King Pharmaceuticals, Inc., Defendant.

*MEMORANDUM AND PRETRIAL ORDER NO. 769*

BECHTLE, J.

***1** Presently before the court are plaintiffs Maggie M. Chaney's, Betty J. Williams', Leroy T. Trotter's, John E. Reed's, James F. Barthel's, Virginia Ann Hopps', Virginia Hassell's, Evelyn Turner's, Deborah Saunders', Catherine Herman's and Mary C. Smith's ("Plaintiffs") motion to remand the above civil action to state court and defendants A.H. Robins Company, Inc. ("Robins") and Wyeth-Ayerst Laboratories Division of American Home Products Corporation ("Wyeth") responses thereto. [FN1] For the following reasons, the court will deny Plaintiffs' motion to remand and will drop certain Plaintiffs from this civil action pursuant to Rule 21 of the Federal Rules of Civil Procedure.

FN1. Plaintiffs have also filed several unopposed motions relating to this civil action that do not require discussion in the court's Memorandum. The court will identify and rule on those motions in the accompanying Order.

I. *BACKGROUND*

On January 15, 1998, Plaintiffs filed this civil action in the Circuit Court of Montgomery County, Alabama. [FN2] On February 17, 1998, Robins and Wyeth filed a notice of removal to the United States District Court for the Middle District of Alabama, Northern Division. The removal was based upon complete diversity of citizenship under 28 U.S.C. § 1332. [FN3] While this civil action was pending before the Middle District of Alabama, Plaintiffs filed an Amended Complaint. Additionally, Plaintiffs filed a motion to remand the action back to state court. Subsequently, the Judicial Panel on Multidistrict Litigation transferred this civil action to this transferee district court for inclusion in MDL No. 1203.

FN2. The Complaint asserts only state common law claims and no federal claims are presented.

FN3. That statute provides:
The district courts shall have original jurisdiction of all actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-
(1) citizens of different States;
(2) citizens of a State and citizens or subjects of a foreign state;
(3) citizens of different States and in which citizens

or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in Section 1603(a) of this title, as plaintiff and citizens of a State or of different States. 28 U.S.C. § 1332(a).

II. *DISCUSSION*

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). An action based upon diversity shall be removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought ." 28 U.S.C. § 1441(b). Thus, only if an action could have originally been brought in federal court may it be removed from state court to federal court. The removing party bears the burden of establishing federal jurisdiction. *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990). The removal statute is "strictly construed against removal" and all doubts are resolved in favor of remand. *Id.* The existence of diversity jurisdiction is generally determined by analyzing the plaintiff's complaint. *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 29 (3d Cir.1985).

A. *Defendants' Compliance with 28 U.S.C. § 1446*

Plaintiffs assert that Defendants failed to comply with the procedural requirements of 28 U.S.C. § 1446, which requires all joined defendants to join in the notice of removal within thirty days of service of the initial pleading. [FN4] 28 U.S.C. § 1446(b). Defendant Abana Pharmaceuticals, Inc. ("Abana") was served with Plaintiffs' initial pleading on January 22, 1998. Plaintiffs assert that Abana did not consent to or join in the notice of removal within thirty days of that date. Abana filed its notice of joinder in the removal on February 23, 1998. Plaintiffs are correct that February 23, 1998, on its face, falls outside of the prescribed thirty day time period. February 23, 1998 was exactly thirty-two days measured from January 22, 1998. However, the thirtieth day measured from January 22, 1998 was Saturday, February 21, 1998. Federal Rule of Civil Procedure 6(a) governs the computation of the time period set forth in 28 U.S.C. 1446(b). *Medina v. Wal-Mart Stores, Inc.,* 945 F.Supp. 519, 521 (W.D.N.Y.1996); *Barton v. Lloyds of London,* 883 F.Supp. 641, 642 n. 3 (M.D.Ala.1995); *Aguado v. Milwaukee Elec. Tool Corp.,* C.A. 90-0159, 1990 WL 18817, at *2 (E.D.Pa. Feb. 26, 1990). Rule 6(a) provides that "[t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, ... in which event the period runs until the end of the next day which is not one of the aforementioned days a Saturday, a Sunday, or a legal holiday." Fed.R.Civ.P. 6(a). Because Abana's time period for filing their joinder in the notice of removal ended on a Saturday, filing the notice on Monday, February 22, 1998, was permissible. The court finds that Defendants complied with the procedural requirements of 28 U.S.C. § 1446.

FN4. Plaintiffs do not challenge any other aspect of any Defendants' compliance with 28 U.S.C. § 1446.

B. *Diversity of Citizenship and Fraudulent Joinder*

***2** Plaintiffs ask the court to remand this action to state court because at least one of the Plaintiffs is a citizen of the same state as one of the Defendants. [FN5] Diversity jurisdiction only exists when all plaintiffs are citizens of different states than that of all defendants named in the action. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267 (1806). On the face of the Complaint, complete diversity does not exist. However, Robins and Wyeth assert that certain Plaintiffs were fraudulently misjoined in this action to defeat diversity jurisdiction. They request that the court sever the claims of the non-diverse Plaintiffs and retain jurisdiction over the remaining Plaintiffs' claims.

FN5. Plaintiffs' Evelyn Turner and Mary C. Smith and defendants Medeva Pharmaceuticals, Inc. and Ion Laboratories, Inc. are citizens of Texas. (Compl. ¶¶ 12, 15, 23 and 24.) Additionally, plaintiff Catherine Herman and defendants Gate Pharmaceuticals and Smithkline Beecham Corporation are citizens of Pennsylvania. (Compl. ¶¶ 14, 16 and 17.) Finally, plaintiff Virginia Hassell and defendant Wyeth are citizens of New Jersey. (Comp. ¶ 11, Def.'s Notice of Removal ¶ 13.)

1. Fraudulent Joinder

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

The doctrine of fraudulent joinder allows the court to disregard parties that are fraudulently joined in a civil action when determining whether complete diversity of citizenship exists. The doctrine recognizes that although plaintiffs are normally free to choose their own forum, a party may not be joined "solely for the purpose of defeating federal diversity jurisdiction." *Schwartz v. State Farm Mut. Auto. Ins. Co.,* 174 F.3d 875, 878 (7th Cir.1999); *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 460-61 (2d Cir.1998); *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996). Parties must have some connection to the controversy if their joinder will defeat diversity jurisdiction. *See Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921) (holding that "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy"). In the diversity context, a district court examining fraudulent joinder is not required to find fraud in the common law sense of that term. *Katz v. Costa Armatori, S.p.A.,* 718 F.Supp. 1508, 1513 (S.D.Fla.1989); *see also Lewis v. Time, Inc.,* 83 F.R.D. 455, 460 (E.D.Cal.1979) (explaining that fraudulent joinder "does not reflect on the integrity of plaintiff or counsel ... but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists"). Accordingly, the court is not required to delve into the subjective intent behind the preparation or structure of the plaintiff's pleadings. When conducting a fraudulent joinder analysis, the court looks to the plaintiff's complaint at the time the petition for removal was filed and assumes all factual allegations contained in the complaint to be true. *Batoff,* 977 F.2d at 851-52. Additionally, a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity jurisdiction has a "heavy burden of persuasion." *Boyer,* 913 F.2d at 111.

Fraudulent joinder may be established where a defendant shows "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant." *Boyer,* 913 F.2d at 111. Fraudulent joinder may also be established if "there is outright fraud in the plaintiff's pleading of jurisdictional facts." *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir.1998); *Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 461 (2d Cir.1998). In *Tapscott v. MS Dealer Serv, Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996), the Eleventh Circuit recognized a third circumstance in which fraudulent joinder can be found. In *Tapscott,* the court stated that "misjoinder can be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Tapscott,* 77 F.3d at 1360. Defendants do not argue that outright fraud is present in Plaintiffs' pleading of jurisdictional facts or that Plaintiffs cannot prove a claim against a nondiverse defendant. Instead, Defendants ask the court to apply *Tapscott's* egregious joinder analysis to this case.

***3** In *Tapscott,* the court, relying on *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92 (1921), held that plaintiffs' attempt to join certain defendants in the same civil action was so egregious as to constitute fraudulent joinder because the transactions between certain plaintiffs and defendants had "no real connection" to the transactions involving the other parties. *Tapscott,* 77 F.3d at 1360. In so holding, the court did not find that any misjoinder could be labeled fraudulent. *Id.* In order to be considered fraudulent under *Tapscott* there must be an "egregious misjoinder." [FN6] *Id.* As the court will discuss below, the plaintiffs in this civil action are clearly misjoined under Federal Rule of Civil Procedure 20(a). However, before reaching that issue the court must find that the joinder is so egregious that it constitutes fraudulent joinder because it wrongfully deprives Defendants the right of removal. *See Alabama Southern Railway Co. v. H.C. Thompson,* 200 U.S. 206, 218 (1906) (stating that "[f]ederal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the [f]ederal courts of the protection of their rights in those tribunals").

FN6. The court notes that although the facts of *Tapscott* concerned the misjoinder of certain defendants, the reasoning of that case has been applied to find that the egregious misjoinder of plaintiffs may also constitute fraudulent joinder. *See Lyons v.. American Tobacco Co.,* No. 96-0881, 1997 WL 809677, at *4 (S.D.Ala. Sept. 30, 1997) (finding plaintiffs fraudulently misjoined); *Koch v. PLM Int'l, Inc.,* No. 97- 0177, 1997 WL 907917, at *4 (S.D.Ala. Sept. 24, 1997) (same).

Initially, the court agrees with *Tapscott* in that a

finding of mere misjoinder does not itself warrant a finding of fraudulent misjoinder. [FN7] *Tapscott,* 77 F.3d at 1360. However, the pleading presently before the court goes well beyond mere misjoinder. In the instant pleading, Plaintiffs attempt to join persons from seven different states into one civil action who have absolutely no connection to each other except that they each ingested fenfluramine, Redux (dexfenfluramine), phentermine or some combination of those drugs. Plaintiffs do not allege that they took the same drug or combination of drugs. Further, Plaintiffs do not allege that they received the drugs from the same source or any other similar connection. The Complaint was originally filed in Montgomery County, Alabama. Only two of the nine remaining Plaintiffs reside in Alabama. [FN8] Two Plaintiffs are listed as residents of Texas. The remaining Plaintiffs are listed as citizens of California, Florida, New Jersey, North Carolina and Pennsylvania. The nonresident Plaintiffs do not allege any contact with Alabama. Additionally, Plaintiffs do not allege that they received or purchased diet drugs in Alabama or from a source located in Alabama. Defendants correctly argue that Plaintiffs fail to point to any logical basis for the proposed joinder of the nonresident Plaintiffs . [FN9] That argument is particularly compelling when most of the nonresident Plaintiffs reside in a jurisdiction in which at least one Defendant is a citizen. Indeed, the court finds that the structure of this pleading is devoid of any redeeming feature as respects the underlying purposes of the joinder rules. The joinder rules are designed "to promote trial convenience and expedite the final determination of disputes." *Saval v. BL Ltd.,* 710 F.2d 1027, 1031 (4th Cir.1983) (citing *Mosley v. General Motors Corp.,* 497 F.2d 1330 (8th Cir.1974)). The joinder of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of the asserted claims. Rather, the joinder of such unconnected, geographically diverse plaintiffs that present individual circumstances material to the final outcome of their respective claims would obstruct and delay the adjudication process. Given Plaintiffs' vast geographic diversity and lack of reasonable connection to each other, the court finds that the attempted joinder of the nonresident Plaintiffs wrongfully deprives Defendants of their right of removal.

FN7. That view is consistent with the notion that the Federal Rules of Civil Procedure shall not be construed to extend the jurisdiction of federal district courts. Fed.R.Civ.P. 82.

FN8. Eleven Plaintiffs were listed on the Complaint. On February 22, 1999, the court entered Pretrial Order No. 479, dismissing plaintiffs John Reed and Leroy Trotter from the action.

FN9. The court also finds that joinder of these plaintiffs would be improper under the Alabama Rules of Civil Procedure. The Alabama Rules of Civil Procedure regarding joinder of parties are virtually identical to the Federal Rules of Civil Procedure that govern joinder of parties in federal court. Ala. R. Civ. P. 20. Additionally, like its Federal counterpart, the Alabama joinder rule is intended to promote trial convenience and limit prejudice to the parties involved. *Turpin Vise Ins. Agency. Inc. v. Foremost Ins. Co.,* 705 So.2d 368, 370-71 (Ala.1997). Accordingly, the court's reasoning discussed below supports a finding that joinder of these plaintiffs in a single civil action would be improper under the Alabama Rules. *See also City of Birmingham v. City of Fairfield,* 396 So.2d 692, 696 (Ala.1981) (stating that because Alabama procedural rules are modeled after federal procedural rules, Alabama courts look to federal court decisions for guidance when construing Alabama Rules).

***4** Because the court finds that the Plaintiffs that destroy diversity jurisdiction are fraudulently joined it may ignore the citizenship of the those parties and exercise jurisdiction over this civil action. Once the court properly exercises jurisdiction, the Federal Rules of Civil Procedure may be applied to shape this civil action to one that comports with those Rules. Accordingly, the court will exercise its discretion under Federal Rule of Civil Procedure 21 and dismiss the non-diverse Plaintiffs' claims without prejudice. Additionally, the court will examine the propriety of joining the remaining two Plaintiffs in a single civil action. [FN10]

FN10. The remaining two Plaintiffs, Chaney and Williams, are Alabama citizens. According to the certified copy of the docket for this civil action forwarded to this court by the United States District Court for the Middle District of Alabama, Plaintiffs filed an Amended Complaint on April 16, 1998, after several defendants filed answers, naming Qualitest Pharmaceuticals, Incorporated

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

("Qualitest") as a defendant. Qualitest is also an Alabama citizen which would destroy diversity jurisdiction. However, on March 22, 1999, both Chaney and Williams filed motions to dismiss Qualitest and certain other defendants from this civil action. The court will grant those motions removing the diversity destroying defendant from this civil action.

2. Permissive Joinder of Remaining Plaintiffs

Plaintiffs assert that they are properly joined in this action under Federal Rule of Civil Procedure 20(a). [FN11] Joinder of plaintiffs under Rule 20(a) is proper if the right asserted arises "out of the same transaction, occurrence, or series of transactions or occurrences" and if there is a "question of law or fact common to all these persons" arising in the action. Fed.R.Civ.P. 20(a). Plaintiffs argue that Rule 20(a) is satisfied because all plaintiffs were "harmed by diet drugs manufactured, marketed, and sold by the defendants." (Pls.' Mem. Supp. Mot. to Remand at 7.) They further assert that "the facts pertaining to the Defendants' conduct are common to all of the Plaintiffs" and "the legal issues of duty, breach of duty, proximate cause and resulting harm are common to all of the Plaintiffs." *Id.* Plaintiffs also argue that their respective purchases of phentermine, dexfenfluramine and fenfluramine are a series of transactions that satisfy the transaction or occurrence requirement of Rule 20(a). The court recognizes that there may be questions of law and fact that are common to these Plaintiffs regarding their respective claims against Defendants. However, the court disagrees with Plaintiffs' assertions that their respective purchases and ingestion of diet drugs, as presently alleged, are a series of transactions or occurrences which satisfy Rule 20(a).

FN11. Rule 20(a) states in relevant part:

(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

Fed.R.Civ.P. 20(a).

To satisfy Rule 20(a)'s transaction or occurrence requirement, "the central facts of each plaintiff's claim [must] arise on a somewhat individualized basis out of the same set of circumstances." *In re Orthopedic Bone Screw Prod. Liab. Litig.*, MDL No. 1014, 1995 WL 428683, at *2 (E.D.Pa. July 17, 1995). The claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, do not satisfy the transaction or occurrence requirement. *See Simmons v. Wyeth Lab., Inc.*, No. 96-6631, 1996 WL 617492, at *4 (E.D.Pa. Oct. 24, 1996) (severing misjoined plaintiffs under similar circumstances). The remaining Plaintiffs, who are both Alabama residents, do not allege that they purchased or received diet drugs from an identical source. However, because these remaining Plaintiffs are Alabama citizens it is possible they purchased or received diet drugs from the same source. The court will not sever these plaintiffs at this time. Rather, for the reasons explained below the court will defer that decision to the appropriate transferor court upon remand by the Judicial Panel on Multidistrict Litigation ("JPML").

*5 The court notes that several other Complaints transferred to this court for inclusion in MDL No. 1203 list multiple plaintiffs in a single civil action. In order to efficiently direct the court's resources to the pretrial coordination efforts that it was designated to perform, the court is not inclined at this stage of the litigation to address the propriety of joinder, except in the most egregious cases. This case, with eleven Plaintiffs selected from seven different states where, coincidentally, a number of Defendants also have citizenship seems to have been an innovative, but unwise, pleading strategy that interferes with the court's ability to administer this case for pretrial purposes. Cases that do not present similarly objectionable elements will not likely be candidates for misjoinder consideration in this transferee court. Rather, such objections should be raised in the transferor districts upon remand by the JPML.

III. *CONCLUSION*

For the foregoing reasons, the court will deny Plaintiffs' motion to remand the civil action back to state court and drop certain Plaintiffs from this civil action pursuant to Rule 21 of the Federal Rules of Civil Procedure.

An appropriate Order follows.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

*PRETRIAL ORDER NO. 769*

AND NOW, TO WIT, this 16th day of July, 1999, upon consideration of plaintiff Maggie M. Chaney's, Betty J. Williams', Leroy T. Trotter's, John E. Reed's, James F. Barthel's, Virginia Ann Hopps', Virginia Hassell's, Evelyn Turner's, Deborah Saunders', Catherine Herman's and Mary C. Smith's motion to remand, IT IS ORDERED that said motion is DENIED.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 21, Plaintiffs James F. Barthel, Virginia Ann Hopps, Virginia Hassell, Evelyn Turner, Deborah Saunders and Catherine Herman are DROPPED from this civil action as follows:

(1) dropped plaintiffs have thirty (30) days from the date of this Order to file a new complaint, in a proper venue, containing the claims that they pled in their original complaints;

(2) dropped plaintiffs shall not name new or additional defendants in any complaints filed pursuant to this Order, but a plaintiff may name fewer defendants;

(3) when a new complaint is filed, if filed in federal court, plaintiff's counsel shall notify the Judicial Panel on Multidistrict Litigation ("JPML") that the new civil action is a potential tag-along action and has been filed. Plaintiff's counsel shall also forward to the JPML a copy of both the newly filed complaint and the docket sheet for each action;

(4) defendants shall not file any notices of opposition with the Clerk of the JPML with regard to the JPML's entry of a conditional transfer order to this district for inclusion in MDL No. 1203 for any of the potential tag-along actions filed pursuant to this Order;

(5) dropped plaintiffs are deemed to have ongoing MDL No. 1203 actions currently before this court for all purposes during the time period between the date of this Order and any filing under this Order of a new complaint and while their actions are in the process of being transferred as tag-along actions to this court. Dropped plaintiffs continue to be under the obligation to furnish required case-specific discovery on a timely basis;

***6** (6) dropped plaintiffs who choose not to file new civil actions in federal court within the thirty (30) day period will have their actions dismissed with prejudice by the court unless such plaintiff notifies this court, in writing, within the same thirty (30) day period that a new civil action has been filed in a state court;

(7) after the expiration of the thirty (30) day time period for filing of new complaints for dropped plaintiffs, upon being advised in writing as to which of the dropped plaintiffs have filed new complaints the court will enter an order dismissing those plaintiffs from this civil action without prejudice; and

(8) for the application of statutes of limitations, laches, or other time bar laws, the filing date of a newly filed action pursuant to this Order shall be deemed to relate back to the date that any dropped plaintiff originally filed his or her complaint in so far as the new complaint alleges only the claims alleged in the original complaint and joins only the defendants named (or fewer) in the original complaint or the successors of such original defendants.

IT IS FURTHER ORDERED that:

(1) plaintiff Maggie M. Chaney's motion to dismiss (document # 200748) defendants Gate Pharmaceuticals, a division of Teva Pharmaceuticals, USA, Inc., Jones Medical Industries, Inc. f/k/a/ Abana Pharmaceuticals, Inc., Richwood Pharmaceutical Company, Inc. a/k/a/ Shire Richwood, Inc., Ion Laboratories, Inc., Medeva Pharmaceuticals, Inc., Goldline Laboratories, Inc., Qualitest Pharmaceuticals, Inc., Zenith Goldline Pharmaceuticals, Inc., United Research Laboratories, Inc., Modern Wholesale Drug Co. Inc. f/k/a Rugby Laboratories, Inc., Geneva Pharmaceuticals, Inc., Camall Company and King Pharmaceuticals without prejudice is GRANTED.

(2) plaintiff Betty Williams' motion to dismiss (document # 200748) defendants Gate Pharmaceuticals, a division of Teva Pharmaceuticals, USA, Inc., Smithkline Beecham Corporation, Jones Medical Industries, Inc. f/k/a/ Abana Pharmaceuticals, Inc., Richwood Pharmaceutical Company, Inc. a/k/a/ Shire Richwood, Inc., Ion Laboratories, Inc., Medeva Pharmaceuticals, Inc., Qualitest Pharmaceuticals, Inc., United Research Laboratories, Inc., Modern Wholesale Drug Co. Inc. f/k/a Rugby Laboratories, Inc., Geneva Pharmaceuticals, Inc., Camall Company and King Pharmaceuticals

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

without prejudice is GRANTED.

(3) plaintiffs James F. Barthel's, Virginia Ann Hopps', Virginia Hassell's, Evelyn Turner's, Deborah Saunders's and Catherine Herman's motions to dismiss certain Phentermine Defendants (document # 200748) are DENIED AS MOOT.

(4) plaintiff Mary Smith's motion for voluntary dismissal without prejudice (document # 200749) is GRANTED.

(5) Qualitest Pharmaceuticals Inc.'s motion to dismiss and motion to file a reply (document # 200258) are DENIED AS MOOT.

(6) Plaintiffs' motion to dismiss defendant Upjohn Company (document # 200750) is GRANTED.

(7) Plaintiffs' motion to dismiss defendant Geneva Pharmaceuticals, Incorporated (document # 200874) is GRANTED.

1999 WL 554584 (E.D.Pa.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

United States District Court,
S.D. Alabama.
Southern Division.

William S. RUDDER, et al., Plaintiffs
v.
K MART CORPORATION, Defendant.

No. CIV. A. 97-0272-BH-S.

Oct. 15, 1997.

Richard T. Dorman, Esq., McRight, Jackson, Dorman, Myrick & Moore, Gregory B. Breedlove, Esq., David G. Wirtes, Jr., Esq., Andrew T. Citrin, Esq., Cunningham, Bounds, Yance, Crowder & Brown, Mobile, James J. Thompson, Jr., Esq., Hare, Wynn, Newell & Newton, Birmingham, Daphne, for William S. Rudder, Johnny McGuire, Cissy Soleman, plaintiffs.

Richard A. Wright, Esq., Thomas Jay Woodford, Matthew C. McDonald, Miller, Hamilton, Snider & Odom, Mobile, for K-Mart Corporation, defendants.

ORDER

Hand, Senior District J.

***1** This action is before the court on plaintiffs' motion to remand (Doc. 7), plaintiffs' motion to leave to amend the complaint to dismiss plaintiff Johnny McGuire (Doc. 28), Richard T. Dorman's motion to withdraw as class counsel (Doc. 29), the motion of Andrew T. Citrin, David G. Wirtes, and Gregory P. Breedlove to withdraw as plaintiffs' counsel (Doc. 30), plaintiffs' motion to dismiss this entire case without prejudice, or, in the alternative, to amend the complaint to delete class allegations (Doc. 35), and defendant's motion to establish a briefing schedule on plaintiffs' motion to dismiss or amend (Doc. 37).

I. BACKGROUND

William S. Rudder, of Alabaster, Alabama, Johnny McGuire, of Dearborn, Michigan, and Cissy Soleman, of Mobile, Alabama, filed this putative national class action nearly a year ago, on or about December 10, 1996, in the Circuit Court for Mobile County, Alabama. Their complaint alleges that the lone defendant, Kmart Corporation, a Michigan corporation domiciled only in Michigan, is guilty of fraud, deceit, intentional, negligent and innocent misrepresentation, and breach of contract, in that it sold to the plaintiffs and others similarly situated "used," "out-of-warranty," and "reconditioned" automobile batteries as new batteries. Each plaintiff premises his or her claim for relief solely on batteries purchased at Kmart stores located in Albertville, Pelham, and Mobile, Alabama. Compl. ¶ 2. Plaintiffs' complaint seeks compensatory and punitive damages in an unspecified dollar amount. Compl. 12, 13.

Kmart learned for the first time on or about March 4, 1997, from Johnny McGuire's responses to Kmart's first set of interrogatories, that McGuire had purchased an allegedly used battery in Michigan prior to his Alabama purchase. Def's Not. of Removal, Ex. N at 8. Defendant removed to this court on April 4, 1997, invoking this court's congressionally-authorized diversity jurisdiction. Kmart's notice of removal alleges that the sole diversity-destroying plaintiff, Johnny McGuire, was fraudulently joined to this action, and that the amount in controversy exceeds $75,000 in light of the putative class representatives' demands for punitive damages.

Plaintiffs do not dispute this prior purchase. McGuire himself testifies that "[o]n September 23, 1996 I purchased an automobile battery from K Mart Store No. 4915 in the State of Michigan.... On November 22, 1996, while visiting relatives in Alabama, I purchased a second automobile battery from K Mart." Aff. of Johnny Pat McGuire, Plts' Brf. in Supp. of Mot. to Remand, Ex. A. Nonetheless, plaintiffs deny that McGuire was fraudulently joined to this action and moved for remand on April 22, 1997.

This court, by order of June 20, 1997, permitted limited discovery on the issue of the propriety of McGuire's joinder to this action. Here, the case takes a twist that must be described as, at best, intriguing; and at worst, deeply disappointing.

The limited jurisdictional discovery disclosed the following details:

***2** McGuire purchased an automobile battery from Kmart in Dearborn, Michigan on September 23, 1997, and took it to a Marathon station in Dearborn to have it installed. The station attendant informed McGuire that he thought the battery was used. Def's Suppl. Brf., Ex. 1, ¶ 9. Sometime between September 23 and September 27, McGuire spoke to his sister in Albertville, Alabama, who suggested he speak to Steve Burt, a private investigator. Def's Suppl. Brf., Ex. 2, ¶ 7. On September 27, McGuire first telephoned his attorney, James J. Thompson, in Birmingham, Alabama. *Id.* at ¶ 3. On October 5, McGuire signed a retainer agreement with Mr. Thompson authorizing Thompson to file suit against Kmart. *Id.* at ¶ 5; Plts' Add'l. Brf. Supp. Remand, Ex. 1, 2. Some time later that same month, McGuire met with private investigators Steve Burt and Jeff Soleman *in Michigan.* The substance of this meeting is unknown. Def's Suppl. Brf., Ex. 2, ¶ 7. On November 19, 1996, at 6:47 p. m., from his Dearborn residence, McGuire phoned Steve Burt at his home in Anniston, Alabama. Def's Suppl. Brf., Ex. 3. On November 21, 1996, at 12:28 p. m., from his sister's home in Albertville, Alabama, McGuire again phoned Burt. Def's Suppl. Brf., Ex. 4.

The next day, November 22, 1996, McGuire purchased a second automobile battery at the Albertville, Alabama Kmart, which he allegedly thought was new. [FN1] He "realized" it was used and again called Steve Burt. Later that day, he met with Burt, Jeff Soleman, and Johnny Haynes in Albertville. Def's Suppl. Brf., Ex. 2, ¶ 8. This second purchase is the only one in which McGuire alleges he was defrauded. The complaint makes no allegation of any purchase or fraudulent conduct which occurred in Michigan. Compl. ¶ 2.

FN1. Lest the crucial point be overlooked, the court points out that McGuire signed a retainer agreement with his lawyer to sue Kmart before buying the battery which forms the basis of his lawsuit.

By order of the court, defendant was to take the deposition of McGuire on August 26, 1997. However, this deposition never took place. On the appointed morning of McGuire's deposition, his attorney, James J. Thompson, stated in a telephone conference among the attorneys in this case:

> He came in on a Delta flight last night and they had to get him off the airplane in a wheelchair. And I met with him briefly last night and again this morning. He's on seven different medications following some type of complications from open heart surgery, and he's had an embolus of some type lodge in the brain, and he has some sort of an aneurysm and it's critical. He's heavily medicated. He's almost to the point of incoherence. I mean, I can't get him to make a normal sentence.
>
> Also, I did learn that he has a murder in his background and has had some criminal complications in his past. And after meeting with Jim Yance this morning and Buddy Brown and Andy Citrin, we kind of decided that--well, we knew full well this guy just would not be an appropriate class rep, due to the criminal implications and problems he's had in the past, as well as his critical medical condition at the present time.

***3** Def's. Suppl. Brf., Ex. 5 at 4, 5. Andrew T. Citrin, another attorney for the plaintiffs, added:

> Our position regarding the diversity is this, and I'll try to state it as clearly as I can: We're going to withdraw Mr. McGuire as a plaintiff, a named plaintiff in this class action. We bring--and also withdraw our position that federal jurisdiction--that the court no longer has federal jurisdiction based on diversity of citizenship among the parties. In other words, without Mr. McGuire in the case, we are conceding that the court does have--that there does exist diversity of citizenship among the parties. However, we continue to maintain our position on the motion to remand, that the court lacks jurisdiction on the basis of inadequate jurisdictional amount.

*Id.* at 5, 6. Counsel for the plaintiffs then offered to make investigators Steve Burt and Jeff Soleman available for depositions. Defense counsel declined the offer, believing further inquiry into the issue of fraudulent joinder to be moot in reliance on the above concession. *Id.* at 7-9.

Plaintiffs' motion to amend the complaint to dismiss McGuire followed, as did the two motions to withdraw now pending before the court.

## II. DIVERSITY OF CITIZENSHIP

Plaintiff McGuire is not diverse from defendant Kmart Corporation; therefore, on the face of the complaint, complete diversity does not exist in this case. *Strawbridge v. Curtiss,* 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806); *Snyder v. Harris,* 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969) (domicile of named class representatives controls for purposes of determining diversity jurisdiction over class action).

Based on the state of affairs revealed in preliminary discovery in state court and the limited jurisdictional discovery allowed in this court, Kmart claims that McGuire is fraudulently joined. Almost incredibly, plaintiffs deny Kmart's allegation.

Until recently, fraudulent joinder could be proved through either of only two avenues: "the removing party must show either [1] that there is no possibility that the [nondiverse] plaintiff would be able to establish a cause of action against the [nondiverse] defendant in state court or [2] that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir.1983); *Cf. Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989).

Recently, the Eleventh Circuit recognized a third circumstance in addition to the two recognized in *Coker* and *Cabalceta,* in which fraudulent joinder could be held to exist: the court flatly rejected the notion that "misjoinder, no matter how egregious, is not fraudulent joinder" and held that "misjoinder can be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996). Of course, the court did not hold that any misjoinder could be labeled *ipso facto* "fraudulent." *Tapscott* requires an "egregious misjoinder." *Id.*

***4** The court concludes that McGuire is fraudulently joined to this action based on all three of the above theories.

A. Fraudulent Joinder for Inability to Establish Cause of Action In State Court

Evaluation of the issue of whether McGuire is fraudulently joined under the first rubric requires the court to canvass only briefly the law that would govern McGuire's claims.

1. Fraud/Misrepresentation/Suppression Claims

This case was filed before the Alabama Supreme Court's decision in *Foremost Ins. Co. v. Parham,* 693 So.2d 409 (Ala.1997); accordingly, the former "justifiable reliance" standard applies. Under that standard,

> [a] plaintiff, *given the particular facts of his knowledge,* understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is 'one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth.'

*Hickox v. Stover,* 551 So.2d 259, 262 (Ala.1989), *citing Southern States Ford, Inc. v. Proctor,* 541 So.2d 1081, 1091-92 (Ala.1989) (Hornsby, C.J., concurring specially) (emphasis supplied).

Naturally, under both pre- and post-Parham law, actual knowledge of the falsity of the representation, or actual knowledge of the facts allegedly suppressed, is a bar to a fraud action. *See, e.g., Jones v. DCH Health Care Authority,* 621 So.2d 1322 (Ala.1993); *Garner v. JMIC Life Ins. Co.,* 693 So.2d 478 (Ala.Civ.App.1997); *Silver v. Jones,* 679 So.2d 272 (Ala.Civ.App.1996); *Pace v. Colonial Penn Ins. Co.,* 690 So.2d 369 (Ala.Civ.App.1996).

The evidence before this court is all but absolutely conclusive that McGuire purchased the battery for his sister in Albertville with the full expectation, *if not the desire,* that the battery be "used." Clearly, therefore, any conceivable theory of recovery premised on fraud or misrepresentation would be precluded by McGuire's prior knowledge of the allegedly defective condition of the battery he purchased in Alabama. Accordingly, there is not "even a possibility" that McGuire could successfully prosecute his fraud claims in state court. *Coker, supra* at 1440.

2. Contract/Express Warranty Claim

McGuire also states a claim sounding in contract. This claim meets the same fate as his fraud claims. The contract claim is premised on a transaction for

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

the sale of goods; accordingly, the Alabama Uniform Commercial Code--Sales, Ala.Code § 7-2-101 et seq., governs. Under § 7-2-313(1), a seller's affirmation must "become part of the basis of the bargain" before it will be considered an express warranty. Although the official commentary to Ala.Code § 7-2-313 suggests that generally reliance on an express warranty need not be shown, courts have widely recognized the "basis of the bargain" requirement as embodying an element of reliance on the warranty. [FN2] In interpreting the same uniform code section, [FN3] the Third Circuit has held that "once the buyer has become aware of the affirmation of fact or promise, the statements are presumed to be 'part of the basis of the bargain' *unless the defendant, by 'clear and affirmative proof,' shows that the buyer knew that the affirmation of fact or promise was untrue.*" *Cipollone v. Liggett Group, Inc.,* 893 F.2d 541, 568 (3d Cir.1990) (emphasis supplied); *Cf. Weng v. Allison,* 287 Ill.App.3d 535, 223 Ill.Dec. 123, 678 N.E.2d 1254 (Ill.App.3d Cir.1997) (same).

FN2. *See, e.g., Maine Farmers' Exchange v. McGillicuddy,* 697 A.2d 1266 (Me.1997); *The American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 1997 WL 336358 (Tex.1997) (publication pending); *Global Truck & Equip. Co. v. Palmer Mach. Works, Inc.,* 628 F.Supp. 641 (N.D.Miss.1986); *O'Connor v. Young,* 1995 WL 415138 (N.D.Cal.).

FN3. *See* Uniform Commercial Code § 2-313.

***5** The Alabama courts have not squarely addressed the meaning of "basis of the bargain," but have said that reliance is not "the determining factor." *Massey-Ferguson, Inc. v. Laird,* 432 So.2d 1259, 1261 (Ala.Civ.App.1983); *Winston Industries, Inc. v. Stuyvesant Ins. Co.,* 55 Ala.App. 525, 530, 317 So.2d 493, 497 (Civ .App.1975). The court's research discloses no Alabama cases in which the buyer of goods attempted to sue the seller for breach of warranty when the buyer knew of the actual falsity of the warranty at the time of purchase.

Whatever position the courts of Alabama would take regarding the meaning of "the basis of the bargain" in this context, McGuire's contract--i.e., warranty--claim would surely fail. Kmart has adduced "clear and affirmative proof" that McGuire knew the actual, allegedly nonconforming condition of the battery at the time he purchased it. It is therefore inconceivable that any representation by Kmart that the battery was new could form "part of the basis of the bargain." As with McGuire's fraud claims, there simply is not "any possibility" that he could succeed in state court on his contract claim.

B. Fraud in Pleading Jurisdictional Facts

Furthermore, based on the facts recited above, the court has little difficulty finding "outright fraud in the plaintiff's pleading of jurisdictional facts." *Coker, supra.* Those facts speak for themselves.

C. *Tapscott:* "Fraudulent Misjoinder"

Finally, the court turns to the third established theory of fraudulent joinder, which raises the issue of whether plaintiff McGuire is so egregiously misjoined to this action as to constitute fraudulent joinder. *Tapscott, supra* at 1360. The court concludes that, just as McGuire's Alabama transaction was a sham, so is his attempted joinder to this action.

Manifestly, a party can not be misjoined if joinder is proper. Necessarily, therefore, the court's analysis of fraudulent misjoinder must begin with the text of Fed.R.Civ.P. 20. That Rule provides, in pertinent part:

> (a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

Joinder of plaintiffs under Rule 20 is proper if two prerequisites are met. First, the plaintiffs must "assert a right to relief ... arising out of the same transaction, occurrence, or series of transactions or occurrences...." Second, there must be at least one "question of law or fact common" to each plaintiff.

Clearly, McGuire and the other plaintiffs do not "assert a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences." [FN4] McGuire's Alabama purchase--assuming *arguendo* that it could possibly

form the predicate for a valid cause of action--occurred in complete factual, temporal and geographic isolation from Rudder's and Soleman's. The record contains no evidence of any connection whatsoever between the plaintiffs or their respective transactions. Indeed, McGuire testifies in essence that he has never spoken to either William Rudder or Cissy Soleman. See Def's Suppl. Brf., Ex. 2 at ¶ ¶ 7, 8. The record reflects no reason why the joinder of McGuire, a Michigan resident, to the other two plaintiffs, Alabama residents, would serve any legitimate purpose of fairness or judicial efficiency. In short, the claims of McGuire, and Rudder and Soleman, are not claims that a reasonable person would normally expect to be tried together. *See, e.g., Turpeau v. Fidelity Financial Services, Inc.,* 936 F.Supp. 975, 978 (N.D.Ga.1996), *aff'd,* 112 F.3d 1173 (11th Cir.1997); *Papagiannis v. Pontikis,* 108 F.R.D. 177, 179 (N.D. Ill.1985; *Hooper v. GMAC,* No. 97-0330- BH-S (S.D.Ala. Sept. 8, 1997); *Koch v. PLM International, Inc.,* No. 97-0177- BH-C (S.D.Ala. Sept.24, 1997). [FN5]

FN4. The court is aware that its holding as to McGuire's joinder has obvious implications as to the joinder of William Rudder and Cissy Soleman. However, the notice of removal and motion to remand place in controversy only the propriety of McGuire's presence in this lawsuit. The court need not, and will not, issue any opinion or order as to the joinder of the remaining plaintiffs in the absence of an appropriate motion stating sufficient cause therefor.
Furthermore, the mere possibility of a multiple misjoinder does not undercut the applicability of *Tapscott's* fraudulent misjoinder analysis to this case; were it otherwise, Tapscott's holding could be completely defeated by simply doing twice what that case prohibited. This would be an exceedingly absurd result.

FN5. It is unnecessary for the court to express any view as to whether any question of law or fact common to any of the plaintiffs' claims will arise in this case. The court's holding that the attempted joinder of McGuire is improvident is amply supported by the finding that his claims do not arise from "the same transaction, occurrence, or series of transactions or occurrences."

***6** In this case the additional element of collusive joinder to defeat the diversity jurisdiction of the federal courts is also present. The court would abdicate its judicial function if it were to turn its back on such glaring manipulation of the Federal Rules of Civil Procedure and the decisions of the federal courts. This court agrees with the Fifth Circuit that "jurisdictional rules may not be used to perpetrate a fraud or ill-practice upon the court *by either improperly creating or destroying* diversity jurisdiction." *Grassi v. Ciba-Geigy, Ltd.,* 894 F.2d 181, 185 (5th Cir.1990) (emphasis supplied).

As noted *supra, Tapscott* did not hold that any misjoinder could be labeled as fraudulent as a matter of law. In this case, however, it is abundantly clear to the court that the attempted joinder is nothing more than a transparent artifice to defeat the diversity jurisdiction of this court. [FN6] On the facts of this case, the court now holds that the attempted joinder is so egregious, unreasonable, and patently wanting in any colorable basis, as to constitute a fraudulent misjoinder. *Tapscott, supra,* at 1360; *Turpeau, supra.*

FN6. Also, the court does not hold that a party is *per se* fraudulently misjoined merely because plaintiff's counsel's subjective intent motivating the attempted Rule 20 joinder is to avoid federal diversity jurisdiction. *Cf. Burns v. Windsor,* 31 F.3d 1092, 1096 (11th Cir.1994) ( "[C]ounsel's subjective intent in drafting the prayer is not the true issue.") *Tapscott* requires an "egregious misjoinder" in order for fraudulent joinder to exist, and the court finds such on this record.

## III. AMOUNT IN CONTROVERSY

The court speculates with some dismay that the aggregate value of the attorneys' fees incurred by the parties on the sole issue of this court's jurisdiction probably approaches, if it does not exceed, this court's jurisdictional threshold of $75,000.00, while the out-of pocket pecuniary losses for each named plaintiff are on the order of $50.00 to $100.00. Notwithstanding this phenomenon, this court must decide whether "the matter in controversy exceeds the sum or value of $75,000, *exclusive of interest and costs.*" 28 U.S.C. § 1332(a) (emphasis supplied).

Because the complaint seeks damages in an unspecified dollar amount, defendant will carry its burden of proving each jurisdictional fact to this court only if it proves "by a preponderance of the

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

evidence" that the amount in controversy exceeds the jurisdictional minimum. *Tapscott, supra,* at 1357.

*Tapscott* also held that, under Alabama law, "the state and not the victim is considered the true party plaintiff because punitive damages do not compensate a victim for loss but serve to punish and deter.... The punitive damages sought in this case are a single collective right in which the putative class has a common and undivided interest .... [T]herefore ... punitive damages in this class action suit may be considered in the aggregate when determining the amount in controversy for jurisdictional purposes." *Id.* at 1358, 59. Although the court did not intend "to establish a bright line rule that any class claim for punitive damages may be aggregated to meet the amount-in- controversy requirement," the court finds no facts on this record which would militate against aggregation of punitive damages in this case. Neither does the court believe that a successful class claim for punitive damages in this case would likely fall short of $75,000.

***7** Accordingly, notwithstanding the relatively small amount of potential compensatory damages claimed by each plaintiff, the potentially large size of the putative class, combined with the demand for punitive damages, amply persuades the court that the amount in controversy is satisfied in this case. 28 U.S.C. § 1332(a).

## IV. MOTION TO DISMISS OR AMEND COMPLAINT

Plaintiffs moved the court on or about October 3, 1997, to dismiss this entire cause, or, in the alternative, to allow an amendment to the complaint to delete all class allegations (Doc. 35). Defendant has moved the court to establish a briefing schedule on this motion (Doc. 37).

The court finds that no briefing schedule is necessary. If the court were to grant plaintiffs' motion to dismiss or amend it would sacrifice its judicial prerogative to guard against further manipulations of the sort observed in the early stages of this matter. The court will therefore deny the motion to dismiss or amend.

## V. CONCLUSION

This court once believed that it had seen it all, but this case has compelled the court to revise that belief. If it is forced to do so again, the lawyers responsible will hold that dubious distinction to the peril of their good standing in the Bar of this court.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. That Plaintiffs' motion to remand (Doc. 7) is DENIED;

2. That plaintiffs' motion to amend the complaint to dismiss plaintiff Johnny McGuire (Doc. 28) is GRANTED, and all claims of Johnny McGuire arising out of his Albertville, Alabama battery purchase are hereby DISMISSED;

3. That Richard T. Dorman's motion to withdraw as class counsel (Doc. 29) is GRANTED;

4. That the motion of Andrew T. Citrin, David G. Wirtes, and Gregory P. Breedlove to withdraw as plaintiffs' counsel (Doc. 30) is GRANTED;

5. That plaintiffs' motion to dismiss this entire case without prejudice, or, in the alternative, to amend the complaint to delete class allegations (Doc. 35) is DENIED;

6. That defendant's motion to establish a briefing schedule on plaintiffs' motion to dismiss the case (Doc. 37) is MOOT;

7. That, in accordance with this court's order of May 5, 1997, the parties are ORDERED to submit their Fed.R.Civ.P. 26(f) report no later than 30 days from this date;

8. That this action is hereby REFERRED to the Magistrate Judge for a hearing and ruling on the propriety of class certification.

1997 WL 907916, 1997 WL 907916 (S.D.Ala.), 44 UCC Rep.Serv.2d 101

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, S.D. Alabama.

Gloria Wilkinson LYONS, et al., Plaintiffs,
v.
THE AMERICAN TOBACCO COMPANY, INC., et al., Defendants.

No. Civ.A. 96-0881-BH-S.

Sept. 30, 1997.

ORDER

HAND, Senior J.

*1 This action is before the Court on the following matters: (1) Plaintiffs' motion (Doc. 12) to remand; (2) the motion (Doc. 17) of defendant B.A.T. Industries, p.l.c. (B.A.T.Industries) to dismiss for lack of personal jurisdiction; and (3) the motion (Doc. 21) of defendant The Tobacco Institute, Inc. (Tobacco Institute) to dismiss for lack of personal jurisdiction. Upon consideration of these motions, the respective briefs filed in support thereof and opposition thereto and all pertinent portions of the record, the Court concludes that the motion to remand and the Tobacco Institute's motion to dismiss are due to be denied while the motion to dismiss B.A.T Industries is due to be granted.

As an introductory matter, it is undisputed that in 1994 counsel for the plaintiffs filed a lawsuit in the United States District Court for the Eastern District of Louisiana, and obtained from the district court a nationwide class certification order. *Castano v. The American Tobacco Company,* 160 F.R.D. 544 (E.D.La.1995). Plaintiffs concede that they were members of the *Castano* class during its pendency. Plaintiffs' Memorandum (Doc. 13) at 7. On May 23, 1996, the United States Court of Appeals for the Fifth Circuit reversed the district court's certification order as an abuse of discretion. *Castano v. The American Tobacco Co.,* 84 F.3d 734 (5th Cir.1996). The case at bar was filed shortly after the *Castano* decertification and asserts five causes of action against various cigarette manufacturers and distributors: (1) Fraud and Deceit; (2) Suppression; (3) Negligent Misrepresentation; (4) Breach of Express Warranty; and (5) Breach of Implied Warranty. [FN1] The claims asserted in this action are virtually identical to those asserted in *Castano;* plaintiffs seek compensation solely for the injury of nicotine addiction and essentially assert a theory that the defendants fraudulently failed to inform consumers that nicotine is addictive and manipulated the level of nicotine in cigarettes to sustain their addictive nature.

FN1. What plaintiffs label as their sixth "cause of action" is simply a prayer for injunctive relief.

MOTION TO REMAND

Plaintiffs motion to remand is predicated on the assertion that complete diversity does not exist among the parties because (1) plaintiffs Wyatt Tuck and Eleanor Tuck are properly joined plaintiffs who are citizens of North Carolina as is the defendant R.J. Reynolds Tobacco Company and (2) plaintiff Gloria Wilkinson Lyons is a citizen of Alabama as are certain properly joined distributors. The Court, however, agrees with the defendants that complete diversity does exist between the properly joined parties in this litigation. The Court finds its unnecessary to conduct oral arguments on this matter as requested by the plaintiffs (Doc. 49) and such request is therefore DENIED.

A. Plaintiffs Wyatt and Eleanor Tuck

Plaintiffs concede that the claims of Wyatt and Eleanor Tuck did not arise in Alabama but rather from acts occurring in North Carolina. [FN2] Plaintiffs also assert that the state law claims they raise are in no way preempted by federal law. Plaintiff's Reply Memorandum (Doc. 36) at 10-11. Plaintiffs, however, offer no explanation for the joinder of Alabama and North Carolina plaintiffs beyond a mere assertion of an alleged right to do so under a class action aegis.

FN2. *See,* Plaintiffs' Memorandum (Doc. 13) at 15.

*2 Although the Fifth Circuit in *Castano,* plaintiffs' predecessor class action litigation, emphasized that "[i]n a multi-state class action, variations in state law may swamp any common law issues and defeat

predominance," plaintiffs herein have, without further explanation, continued their efforts to join two separate and distinct state law actions for fraud and product liability and have claimed a right of action "as provided by any state's law and/or as authorized by the choice of law provisions of the state in which this Court sits." *Cf., Castano,* 84 F.3d at 741 and Plaintiffs' Complaint at ¶ 63. With specific respect to the acts which give rise to the Tucks' claims for fraud, misrepresentation, suppression and breach of express or implied warranties, plaintiffs expressly acknowledge that such claims are "cognizable under North Carolina law." Plaintiffs' Reply Memorandum (Doc. 36) at 13, n. 1. The issues addressed in the *Castano* opinion, although directed toward the appropriateness of class certification in general and the specific designation of the class, is nonetheless relevant to the issue before this Court, namely whether the North Carolina plaintiffs have been joined in an effort to avoid diversity jurisdiction. It is particularly relevant to the case at bar inasmuch as the only explanation given by the plaintiffs for the joinder relates to the alleged appropriateness of joining the plaintiffs' class claims. [FN3]

FN3. Plaintiffs specifically argue that "pursuing the North Carolina Class Members' claims in this action is far more convenient to the parties than would be pursuing two separate actions in different locales." Plaintiffs' Reply Memorandum (Doc. 36) at 13. Plaintiffs also argue that "joinder of the North Carolina Plaintiffs will greatly enhance judicial economy, and likewise greatly reduce the expenses to the parties [and] will reduce the risk of conflicting determinations of fact on the question of conspiracy, and lessen the risk of inconsistent damages awards or of multiple punishment for the same offense. *Id.* at 14-15.

Another concern expressed by the Fifth Circuit in *Castano,* which is also of concern to this Court, involves the predominance of the alleged common issues of law and/or fact. As stated in *Castano:*

> A district court certainly may look past the pleadings to determine whether the requirements of rule 23 have been met. [Footnote omitted] Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues. *See,* MANUAL FOR COMPLEX LITIGATION § 30.11 (3d ed.1995).
>
> The district court's predominance inquiry demonstrates why such an understanding is necessary.... Absent knowledge of how addiction-as-injury cases would actually be tried, however, it was impossible for the court to know whether the common issues would be a "significant" portion of the individual trials. The court just assumed that because the common issues would play a part in every trial, they must be significant. [n. 18: "[T]he district court in the instant case did not, and could not, have determined that the common issues would be a significant part of each case.... [T]he district judge *a quo* had no experience with this type of case and did not even inquire into how a case would be tried to determine whether the defendants' conduct would be a significant portion of each case.] The court's [analysis] would write the predominance requirement out of tile rule, and any common issue would predominate if it were common to all the individual trials. [n. 19: "An incorrect predominance finding also implicates the court's superiority analysis: The greater tile number of individual issues, the less likely superiority can be established."]

***3** *Castano,* 84 F.3d at 744-45. The Fifth Circuit also noted Professor Charles Allen Wright's opinion that "Judge Jones in Louisiana would be creating a Frankenstein's monster if he should allow certification of what purports to be a class action on behalf of everyone who has ever been addicted to nicotine." *Id., quoting,* Letter of Professor Charles Allen Wright to N. Reid Neureiter, Williams & Connolly, Washington, D.C. The importance of these observations is enhanced by the findings in *Castano* that:

> The plaintiffs initially defined the class as "all nicotine dependent persons in the United States," including current, former and deceased smokers since 1943. Plaintiffs conceded that addiction would have to be proven by each class member; the defendants argued that proving class membership will require individual mini-trials to determine whether addiction actually exists.
>
> * * *
>
> [and] the district court refused to certify the issues of injury-in-fact, proximate cause, reliance, affirmative defenses, and compensatory damages, concluding that the "issues are so overwhelmingly replete with individual circumstances that they

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

quickly outweigh predominance and superiority." Specifically, the court found that whether a person suffered emotional injury from addiction, whether his addiction was caused by the defendants' actions, whether he relied on the defendants' misrepresentations, and whether affirmative defenses unique to each class member precluded recovery were all individual issues. As to compensatory damages and the claim for medical monitoring, the court concluded that such claims were so intertwined with proximate cause and affirmative defenses that class certification would not materially advance the individual cases.

*Castano,* 84 F.3d at 738 and 740. Plaintiffs herein have asserted the same claims as were previously raised in *Castano* and seek the same class certification, albeit restricted to Alabama and North Carolina plaintiffs' classes. The statistical facts alleged by the plaintiffs in their complaint at paragraphs 32 support a conclusion similar to that reached in *Castano* that "the issues of injury-in-fact, proximate cause, reliance, affirmative defenses, and compensatory damages ... are so overwhelmingly replete with individual circumstances" that class certification on such issues would be inappropriate. *Cf.,* Complaint at ¶ 32 and *Castano,* 84 F.3d at 738 and 740. Plaintiffs also acknowledge that tobacco addiction involves both "pharmacologic and behavioral processes" (Complaint at ¶ 33) which of necessity requires individual analysis. Consequently, the observations in *Castano* which are quoted above are again particularly relevant to the case at bar because plaintiffs' rationale for joining the North Carolina plaintiffs and North Carolina class claims is solely the alleged superiority of the class action form of litigation.

***4** The joinder of Wyatt and Eleanor Tuck, either individually or as representatives of similarly situated North Carolina residents, to assert nicotine addiction claims which are inherently separate and distinct from the claims asserted by the Alabama plaintiff, is clearly improper. The attempted joinder of the Tucks, particularly in light of *Castano, supra,* is therefore nothing more than a transparent artifice to defeat the diversity jurisdiction of this Court. [FN4] As plaintiffs have appropriately recognized, the Eleventh Circuit explicitly rejected the argument that "misjoinder [under Rule 20], no matter how egregious, is not fraudulent joinder." *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1360 (11th Cir.1996). To the contrary, the Eleventh Circuit held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Id.* Nothing in the *Tapscott* opinion limits its application to joinder of defendants; its reasoning is equally applicable to cases involving the misjoinder of named representative plaintiffs in a putative class action. Plaintiffs nonetheless contend that the mere assertion of a conspiracy among the defendants is sufficient to limit the application of *Tapscott* 's fraudulent misjoinder principle to this case. Plaintiffs' Reply Memorandum (Doc. 36) at 17. Such a contention is specious, particularly in light of the obvious lack of predominance of any common legal principle or fact related to plaintiffs' addiction claims with their inherent individual issues of injury-in-fact, proximate cause, reliance, affirmative defenses and compensatory damages.

> FN4. The Court does not hold that a party is *per se* fraudulently joined merely because plaintiff's counsel's subjective intent motivating the attempted Rule 20 joinder is to avoid federal diversity jurisdiction. *Tapscott* requires an "egregious misjoinder" in order for fraudulent joinder to exist and the Court finds such on this record and in view of *Castano.*

In *Tapscott,* the district court severed the nondiverse portion of the case and granted the motion to remand with respect to that portion. In this case, however, such a disposition would result in two nicotine addiction lawsuits: one proceeding in this Court with Ms. Lyons potentially representing a class of nicotine addicted Alabama smokers, and one proceeding in an Alabama state court with North Carolina plaintiffs purporting to represent nicotine addicted North Carolina smokers. Rule 21 of the Federal Rules of Civil Procedure [FN5] explicitly places it within the sound discretion of this Court to sever and dismiss misjoined parties "on such terms as are just." *Beritiech v. Metropolitan Life Ins. Co.,* 881 F.Supp. 557 (S.D.Ala.1995); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1682. Dismissal of the claims of Wyatt and Eleanor Tuck will be just to all parties involved in this litigation. Defendants will not be deprived of their right to defend themselves in a federal forum through the sophistic pleadings of the plaintiffs.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Neither the Alabama nor the North Carolina plaintiffs will be prejudiced by the dismissal as Ms. Lyons will remain the putative class representative of all nicotine addicted Alabama smokers and the Tucks and proposed class of North Carolina plaintiffs were joined for no legitimate reason in the first instance. Moreover, the Tuck plaintiffs remain free to re-file a similar class action either in a court in North Carolina or in any other state in which they contend such may be maintained with or without joinder of a resident of that state.

FN5. Rule 21 of the Federal Rules of Civil Procedure provides:

Misjoinder of parties is not ground for dismissal of an action. Parties may be added or dropped by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a may be severed and proceeded with separately.

Fed.R.Civ.P. 21 (emphasis added).

B. The Distributor Defendants

***5** The Court also agrees with the defendants that plaintiffs have attempted to defeat federal diversity jurisdiction by naming two Alabama distributors, City Wholesale Grocery Company, Inc. and American Candy Corporation [FN6], and one North Carolina distributor, Thomas & Howard Company of Hickory, Inc, against whom plaintiffs have no possible claim. [FN7] Although plaintiffs in their complaint as in their respective briefs filed in support of their motion to remand generally refer to all defendants collectively in conjunction with at least three of their causes of action, namely their claims for fraud and deceit and for breaches of express and implied warranties, there exists no specific factual allegations in the Complaint to support such claims against the distributors. *See,* Defendants' Memorandum in Opposition (Doc. 35) at 7- 11, which the Court adopts as its opinion. To the extent plaintiffs might have raised such fraud and breach of warranty claims against the distributors, the Court also concludes that such claims are barred by the applicable two year statute of limitations. *See,* Defendants' Memorandum in Opposition (Doc. 35) at 11-16, which the Court also adopts as its opinion.

FN6. Although plaintiffs avoid the issue, they do not dispute the contention that American Candy Corporation does not distribute tobacco products while an entity known as American Candy and Tobacco Company which does so distribute tobacco products was not named at the time of removal.

FN7. The Court also agrees with the defendants that a party fraudulently joined to defeat removal based on federal diversity jurisdiction need not join in or consent to removal but that, in any event, the distributor defendants had so consented in this case. *See,* Defendants' Surreply (Doc. 41) at 2 and cases cited therein.

Although plaintiffs cite no legal support for the proposition, they essentially contend that their alleged conspiracy claim [FN8] constitutes a catch-all mechanism by which to boot-strap claims against tobacco distributors, who themselves are not alleged to have been involved either in the manufacturing process or in any specific direct contact with any of the plaintiffs, to the alleged misconduct of tobacco manufacturers. It is indeed a novel, albeit ludicrous, proposition.

FN8. The Court agrees with the defendants that paragraphs 36 through 47, cited by the plaintiffs as their conspiracy claim, neither alleges any agreement between the tobacco manufacturers and the distributors nor alleges any actions taken by any entity other than the tobacco manufacturers acting individually.

Plaintiffs also argue that "The Resolution Of Issues Of Law Regarding The Named Distributor Defendants Is Premature ... [because] discovery has yet to be conducted." Plaintiffs' Reply Memorandum (Doc. 36) at 7. Plaintiffs subsequently contend that "[d]iscovery is essential for the Plaintiffs to fully prepare arguments concerning the jurisdictional status of the defendant distributors." *Id.* at 7-8. Plaintiffs rely solely on the discretion given the Court in Fed.R.Civ.P. 56 to delay ruling on a motion for summary judgment until the opposing party is permitted to complete all necessary discovery. Plaintiff cites no authority for such fishing expeditions prior to a judicial determination that certain parties have been fraudulently joined in order to avoid or destroy federal diversity jurisdiction. The issues raised as a result of plaintiffs' motion to remand, specifically the manner in which plaintiffs have pled their claims on behalf of North Carolina residents and against

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

distributors and whether the North Carolina plaintiffs and the distributors have been fraudulently joined to avoid federal diversity jurisdiction, are essentially, as plaintiff first acknowledged, legal issues which do not require the conduct of discovery as authorized by Fed.R.Civ.P. 26, *et seq.* In addition, Fed.R.Civ.P. 11 prohibits the assertion of unfounded claims on behalf of or against any party. If plaintiffs were unable at the time they formulated their complaint to set forth any specific factual allegations against the distributor defendants upon which could be based any claim of fraud or breach of warranty, there can be no better admission of fraudulent joinder of these defendants. Consequently, the Court concludes that the distributor defendants have been fraudulently joined and are due to be dismissed without prejudice pursuant to Fed.R.Civ.P. 21.

***6** Inasmuch as the Court has concluded that the North Carolina plaintiffs and the distributor defendants are due to be dismissed, complete diversity does exist between the properly joined parties in this litigation and plaintiffs' motion to remand is due to be denied . [FN9]

FN9. Although not specifically referred to in the text, the Court's decision on plaintiffs' motion to remand followed consideration of all the briefs filed in support of or opposition to the motion, including the various supplemental briefs. *See e.g.*, Docs. 53, 55, 57 and 59.

## MOTIONS TO DISMISS

The Court has also considered the motions (Docs. 17 and 21) filed by B.A.T. Industries, p.l.c. (B.A.T.Industries) and the Tobacco Institute, Inc. (Tobacco Institute) to dismiss for lack of personal jurisdiction, together with plaintiffs' responses in opposition thereto (Docs. 37 and 38), the reply briefs of these defendants (Docs. 41 and 46), and the various supplemental filings of the moving and opposing parties (Docs. 39, 46, 54, 56, 60, 61 and 63). To the extent these defendants have moved the Court for leave to file supplemental authority, i.e. Docs. 60 as duplicative of 61 and 63, such motions are GRANTED.

Upon consideration of these arguments, the Court first concludes that the plaintiffs have carried their burden to demonstrate that the Tobacco Institute has sufficient minimum contacts with the State of Alabama to satisfy the requirements of either the Due Process Clause or Alabama's Long-Arm Statute. Consequently, the Tobacco Institute's motion to dismiss is due to be denied.

In conjunction with the Court's consideration of B.A.T Industries motion to dismiss, the Court first concludes that plaintiffs' motion (Doc. 50) to strike B.A.T. Industries' Reply brief (Doc. 46) is due to be denied. In addition, the Court has reviewed the objections (Doc. 44) filed by defendant Brown & Williamson Tobacco Corporation (B & W) to certain exhibits submitted by the plaintiffs to their Memorandum (Doc. 38) in Opposition to B.A.T. Industries' motion to dismiss and concludes, as did the Court in *Smith v. Brown & Williamson Tobacco Corp.*, No. 96-0459-CV-W-3, 1996 WL 751399 (W.D.Mo. Dec.19, 1996), that "there is no need to expend the parties' (and judicial) resources to determine whether these documents are privileged[;] [t]he documents will be considered for purposes of [B.A.T Industries'] motion without ruling or waiving B & W's objections."

Finally, the Court concludes, for the reasons set forth in B.A.T. Industries' motion to dismiss (Doc. 17), as thereafter supplemented (Docs. 46 and 54), and in *Smith v. Brown & Williamson Tobacco Corp.* ., No. 96-0459-CV-W-3, 1996 WL 751399 (W.D.Mo. Dec.19, 1996), that plaintiffs have failed to carry their burden to demonstrate that B.A .T. Industries has sufficient minimum contacts with the State of Alabama to satisfy the requirements of either the Due Process Clause or Alabama's Long-Arm Statute. [FN10] Consequently, B.A.T. Industries' motion to dismiss is due to be granted.

FN10. The Court has found it unnecessary to rely upon any of the redacted portions of the B.A.T. Industries' brief which was filed under seal.

## CONCLUSION AND ORDER

As stated above, the Court concludes and it is therefore ORDERED as follows:

1. Plaintiffs' motion to remand (Doc. 12) is due to be and is hereby DENIED.

2. Plaintiffs Wyatt and Eleanor Tuck are due to be and are hereby DISMISSED without prejudice pursuant to Fed.R.Civ.P. 21.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

*7 3. The distributor defendants, City Wholesale Grocery Company, Inc., American Candy Corporation and Thomas & Howard Company of Hickory, Inc, are due to be and are hereby DISMISSED without prejudice pursuant to Fed.R.Civ.P. 21.

4. The motion to dismiss (Doc. 17) filed by B.A.T. Industries, p.l.c. is due to be and is hereby GRANTED.

5. The motion to dismiss (Doc. 21) filed by the Tobacco Institute, Inc. is due to be and is hereby DENIED.

As also stated above, it is FURTHER ORDERED that plaintiffs' motions (Docs. 49 and 50) for oral arguments on their motion to remand and to strike B.A.T. Industries' reply brief are hereby DENIED; the motions of B.A.T. Industries and the Tobacco Institute to file supplemental materials (Docs. 53, 54, 55, 60, 61 and 63) are hereby *GRANTED;* and the objections of defendant B & W (Doc. 44) to the exhibits submitted by the plaintiffs in opposition to B.A.T. Industries' motion to dismiss are OVERRULED only to the extent they were considered in connection with B.A.T. Industries' motion to dismiss. The Court will not otherwise rule on B & W's objections and the same shall therefore be presently considered MOOT.

1997 WL 809677, 1997 WL 809677 (S.D.Ala.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

United States District Court, S.D. Alabama.

Daniel KOCH, et al, Plaintiffs,
v.
PLM INTERNATIONAL, INC., et al., Defendants.

No. Civ.A. 97-0177-BH-C.

Sept. 24, 1997.

ORDER

HAND, J.

*1 Before the court is plaintiff's motion to remand this cause to the Circuit Court for Mobile County, Alabama (Doc. 6). For the reasons set forth below, the motion will be DENIED.

I. BACKGROUND

Plaintiffs initiated this putative nationwide class action in the Circuit Court for Mobile County, Alabama, on January 22, 1997. The Circuit Court conditionally certified the class on January 31, 1997. On February 10, the defendants were served with summonses, complaints, copies of plaintiffs' motion for conditional class certification, and the *ex parte* order of the Circuit Court granting the latter motion. On March 6, 1997, defendants filed a notice of removal in this court, invoking this court's diversity jurisdiction pursuant to United States Code, Title 28, section 1332.

Plaintiffs are six individuals who allegedly invested in limited partnership "Units" through the defendant entities. Plaintiffs Daniel Koch and Glan Rawls are Alabama residents; plaintiffs Larry Levin and Charles Leo III are Florida residents; plaintiff William Polt is a New Jersey resident; and plaintiff Leslie M. Walker is a California resident.

All of the six corporate defendants are domiciled in California; defendants PLM International, Inc., and PLM Financial Services, Inc. are also domiciled in Delaware for diversity purposes by virtue of incorporation in that state.

The complaint makes only state common law claims of fraud, deceit, suppression, negligent misrepresentation and suppression, intentional breach of fiduciary duty, negligent breach of fiduciary duty, unjust enrichment, conversion, and conspiracy, against the defendants. No federal claims are presented.

Plaintiff Koch alleges that he made investments totaling $33,580.00 during 1992 and 1993 from a representative of the PLM organization who was employed at Life Cycle Financial. Koch made his investments on the secondary market. Bess Decl. ¶ 17.

Plaintiff Rawls alleges that, in February and December of 1992, he made investments totaling $23,000.00. According to the declaration of Stephen Bess, Rawls purchased his shares on the secondary market through an entity known as "Liquidity Fund," not connected with the PLM organization. Bess Decl. ¶ 17.

Plaintiff Levin alleges that he made investments totaling $200,000 through the brokerage firm of Cowen and Company in 1989 and 1990.

Plaintiff Polt alleges that he invested $32,000 in 1989 through CIGNA Financial Advisors.

Plaintiff Leo alleges that he invested $50,000 in 1990 through the brokerage firm of Legg, Mason, Wood and Walker, Inc.

Plaintiff Walker alleges that he invested a total of $5,000 in 1989, but does not specify the broker through whom he made his investment. Defendants aver that Walker invested through PFG Securities, Inc., located in Tempe, Arizona, pursuant to an initial offering. Defs' Notice of Removal 14, 15, Bess Decl. ¶ 12. This averment is not controverted by plaintiffs and is therefore taken as true for purposes of the present motion.

II. DISCUSSION

*2 Plaintiff Walker is not diverse from any of the defendants; therefore, on the face of the complaint, complete diversity does not exist in this case. *Strawbridge v. Curtiss,* 3 Cranch (7 U.S.) 267, 2

L.Ed. 435 (1806); *Snyder v. Harris,* 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969) (domicile of named class representatives controls for purposes of determining diversity jurisdiction over class action).

Nonetheless, defendants urge this court to assert diversity jurisdiction over this case. In support of diversity jurisdiction, defendants propound to the court three distinct arguments, all of which are based on fraudulent joinder of Leslie Walker, the only diversity-destroying plaintiff. *Tapscott v. MS Dealer Service Corp. .,* 77 F.3d 1353 (11th Cir.1996).

First, defendants argue that plaintiff Walker is fraudulently joined to this action because Alabama's *forum non conveniens* statute, Ala.Code § 6-5-430 (1975) [FN1] would require that his claims be dismissed; accordingly, there is no possibility that he could maintain an action against them in state court. *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989).

FN1. "[T]he courts of this state shall apply the doctrine of forum non conveniens in determining whether to accept or decline to take jurisdiction of an action based upon such claim originating outside this state; and provided further that, if upon motion of any defendant it is shown that there exists a more appropriate forum outside this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interests of justice, the court must dismiss the action without prejudice."

Second, defendants argue that Walker could not maintain an action against them in state court because he has signed an arbitration agreement which would force him to submit his claims to arbitration in California, subject to California law.

Defendants' third and final argument is that the presence of Walker is an example of the "fraudulent misjoinder" recognized by the Eleventh Circuit in *Tapscott.*

Any one of these three arguments, if successful, would be sufficient to vest subject-matter jurisdiction in this court. However, in the court's view of the facts of this base and the controlling law as expounded by the Court of Appeals for the Eleventh Circuit and the district courts of neighboring judicial districts, it is unnecessary for the court to consider the first two arguments advanced by defendants. [FN2]

FN2. The court also notes defendants' argument that this court lacks personal jurisdiction over them with regard to Walker's claims, because his claims do not arise out of any of defendants' contacts with the forum State. The court's ultimate disposition of the present controversy, however, renders this argument moot.

In the case of *Tapscott v. MS Dealer Service Corp., supra,* the Eleventh Circuit explicitly rejected the argument that "misjoinder [under Rule 20], no matter how egregious, is not a fraudulent joinder." *Id.* at 1360. To the contrary, the court held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Id.*

Plaintiffs argue that *Tapscott* is inapposite because it applies only to joinder of defendants. However, nothing in the Tapscott court's opinion limits itself to joinder of defendants. Its reasoning is broad enough to encompass a case involving misjoinder of named representative plaintiffs in a putative class action. Accordingly, when named representatives of a putative class are misjoined for the purpose of defeating federal jurisdiction, the misjoinder may be egregious enough to constitute fraudulent joinder under the *Tapscott* standard. *See Hooper et al. v. General Motors Acceptance Corporation, et al.,* No. CV-97-0330-BH-S (S.D.Ala. Sept. 8, 1997).

***3** Plaintiffs also strenuously argue that Rule 23, rather than Rule 20, is the proper Rule for determining the propriety of the named representatives in a putative class action. The court rejects this argument. Rule 23, Fed.R.Civ.P., does not specify when joinder is proper. On the contrary, it merely provides the criteria a court is to apply in making its determination as to whether or not a particular action is maintainable as a class action. At this early stage of the proceedings, any reference to Rule 23 would be premature. The only Rule governing whether individual plaintiffs may join their claims together into one proceeding is Rule 20. Accordingly, it is that Rule, and that Rule only, which a court must consult in determining whether a plaintiff is so egregiously misjoined as to constitute

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

"fraudulent misjoinder" under *Tapscott*.

The court now turns to the question of whether Walker is so misjoined.

Rule 20, Fed.R.Civ.P., provides in pertinent part:

> (a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

Joinder of plaintiffs under Rule 20 is proper if two prerequisites are met. First, the plaintiffs must "assert a right to relief ... arising out of the same transaction, occurrence, or series of transactions or occurrences...." Second, there must be at least one "question of law or fact common' <<currency>> to both plaintiffs . [FN3]

FN3. It is unnecessary for the court to express any view as to whether any question of law or fact common to any of the plaintiffs will arise in this case. The court's holding that the attempted joinder of Walker is improvident is amply supported by the finding that the claims presented by them do not arise from "the same transaction, occurrence, or series of transactions or occurrences."

Clearly, the plaintiffs in the case at bar do not "assert a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences." The requisite "series of transactions or occurrences" does not exist between six individual persons who, for all the record shows, have never met one another, and who dealt individually with brokerage firms in four different states which have no relation to one another. The only common thread joining the claims of Walker to any of the other plaintiffs is that Walker, like the others, purchased "Units" in limited partnerships marketed by the PLM entities.

This case is analogous to a hypothetical case in which six perfect strangers each buy a set of defective tires through completely unrelated tire outlets, and then wish to join together their product-liability claims against the manufacturer of the tire. Such attenuated commonality can not establish a "series of transactions or occurrences" for purposes of Fed.R.Civ.P. 20, even if the principal (the tire manufacturer or the PLM entities) provided to the brokers marketing materials to promote the sale of its products. *See, e.g., Turpeau v. Fidelity Financial Services, Inc.,* 936 F.Supp. 975, 978 (N.D.Ga.1996), *aff'd,* 112 F.3d 1173 (11th Cir.1997); *Papagiannis v. Pontikis,* 108 F.R.D. 177, 179 (N.D.Ill.1985).

***4** In this case the additional element of collusive joinder to defeat the diversity jurisdiction of the federal courts is also present. The court can not, and will not, turn its back on such glaring manipulation of the Federal Rules of Civil Procedure, and the decisions of the federal courts. "[J]urisdictional rules may not be used to perpetrate a fraud or ill-practice upon the court by either improperly creating or destroying diversity jurisdiction." *Grassi v. Ciba-Geigy, Ltd.,* 894 F.2d 181, 185 (5th Cir.1990).

*Tapscott* did not hold that any misjoinder could be labeled as fraudulent as a matter of law. In this case, however, it is abundantly clear to the court that the attempted joinder of Walker is nothing more than a transparent artifice to defeat the diversity jurisdiction of this court. [FN4] Plaintiffs have proffered no justification for the joinder. On the facts of this case, the court holds that the attempted joinder is so egregious, unreasonable, and wanting in any colorable basis, as to constitute a fraudulent misjoinder. *Tapscott, supra,* at 1360; *Turpeau, supra.*

FN4. The court does not hold that a party is *per se* fraudulently joined merely because plaintiff's counsel's subjective intent motivating the attempted Rule 20 joinder is to avoid federal diversity jurisdiction. *Tapscott* requires an "egregious misjoinder" in order for fraudulent misjoinder to exist, and the court finds such on this record.

It remains to be considered what is the proper disposition of Walker's claims in this case. It would be within the province of this court's discretion simply to ignore the domicile of Walker in determining whether complete diversity exists, to sever his claims from those of the other plaintiffs and remand his portion to state court, or to dismiss Walker pursuant to Fed.R.Civ.P. 21. The court finds that the most appropriate course of action is to dismiss Walker from this action.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Rule 21, Fed.R.Civ.P., provides in its entirety:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be added or dropped by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

The Rule explicitly places it within the sound discretion of this court to dismiss misjoined parties "on such terms as are just." *See also* Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1682. Of course, it is always within the sound discretion of the court to drop indispensable parties in order to preserve its lawfully ordained diversity jurisdiction. *Fritz v. American Home Shield Corp.*, 751 F.2d 1152 (11th Cir.1985). [FN5]

FN5. Because the court holds that Walker was misjoined under Rule 20, he is *a fortiori* not indispensable under Rule 19.

As is required by Rule 21, dismissal of the individual claims of Walker without prejudice will be "just" to all parties involved in this litigation. Defendants will not be unfairly deprived of their right to defend themselves in a federal forum. No plaintiff will be prejudiced by the dismissal, as the remaining five plaintiffs will remain the putative class representatives, and Walker was named as such for no legitimate reason in the first instance. Moreover, if Walker still wishes so adamantly to vindicate his claims in this State, he is not prevented from attempting to do so. He may re-file his non-diverse lawsuit in the courts of Alabama if he is inclined to put defendants' argument under Ala.Code § 6-5-430 to the test. In the alternative, he may sue individually in the courts of Arizona or California, or he may join the prospective class in this case if it is ultimately certified in this court. He may not, however, be used as a pawn to divest this court of subject-matter jurisdiction over this action.

## III. CONCLUSION

***5** Plaintiff Leslie M. Walker is fraudulently misjoined to this cause of action under *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.1996). Therefore, complete diversity exists in this case. The court has satisfied itself *sua sponte* that the requisite amount in controversy exists due to plaintiffs' demand for punitive damages.

NOW, THEREFORE, it is hereby ORDERED:

1. The individual claims of plaintiff Leslie M. Walker are DISMISSED without prejudice;

2. Plaintiffs' motion to remand this action to the Circuit Court for Mobile County, Alabama, is DENIED;

3. Plaintiffs' request for an award of costs and fees associated with removal is DENIED;

4. and Defendants are ORDERED, in accordance with this court's previous order of April 9, 1997, to respond to plaintiffs' complaint by answer, or by appropriate motion, no later than FRIDAY, OCTOBER 10, 1997.

SO ORDERED.

1997 WL 907917, 1997 WL 907917 (S.D.Ala.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

Wayne Axson, J.W. Barnes, O'Neal Barr, Norman Bolen, F.H. Dick, C.R. Brown, Kirby Brown & Son, Gregg Covington, Michael Cumbee, Ryan Gunter, Andy Gunter, Mark Kinard, Clarence McMillan, Donnie Morris, J.L. Nettles, Jeff Reeves, H.B. Salley, Sandy Sanders, James Smith, John T. Still, Richard Widener, Glenn Barr, K.B. Bates, Von L. Ginn, Lonnie Ginn, Tony Jarrell, Carl Platts, Vernon Rahn, Larry Rahn, Billy Williams, E.S. Bennett, Bud Bowers, Corrin Bowers, W.H. Bull, W.T. Dantzler, Don Funchess, Maynard Funchess, Garrick Farms, Inc., Don Garrick, Warren Mole, Jimmy Mole, Emmett Rouse, Bickley Farms, Inc., Ken Bickley, Bruce Bishop, Dargon Culclasure, W. Capers Holmen, Jeff Coat Farms, Carole F. Jeffcoat, Roland Q. Mooer, Jessie Nimmons, Moss H. Perrow, Jr., Jacob B. Shuler, Jr., Ted Shuler and Sons, William C. Stanley, Dennis R. Ulmer, Lewis J. Ulmer, J. Edward Brown, J.N. Brown, Gerry H. Brown, Robert Crosby, John Donnell Farms, A.W. Donnell, Jerry D. Carson, G.E. Cone, Robert Connelly, W.M. DuBose & Sons, Inc., James E. Fender, Bryan Fogle, Stanley Gruber, Ham Bone Farms, Inc., Charles Reeves, Hamp Holmes, B.L. Jarrell, Jerry Jarrell, Wes Jarrell, Charles Laffitte, Jeff Lucas, Daniel McAlhaney, Otis McAlhaney, Harry McAlhaney, Sublett McAlhaney, Ronnie McClure, David McKenzie, Hugh C. McLauren, III, Charles R. McMillan, J.O. Patterson, Keith Poole, Mark Priester, Robert H. Riley, Jr., Tilden F. Riley, III, Carnell River, J. Howard Shirer, Estate of S. Ben Solomons, Hughsie Trowell, James )

Civil Action No. 9 02 2879 23

**ACKNOWLEDGEMENT OF RECEIPT OF FILED COPY OF NOTICE OF REMOVAL**

| | |
|---|---|
| H. Weathers, Jody Weathers, John Wienges, O.H. Wienges & Son, Joseph E. Wooten, Ashley Bush, Chris Carsten, D.Z. Danztler, R. Barry Hutto, Clyde Davis, Sr., Clyde Davis, Jr., Francis Davis, John O. Davis, Chris Furtick, Hayne Haigler, David Jarrell, Hugo Lyons, Johnny McMillam, Gene Nix, Gene Nix Farms, Inc., Estate of Marvin Ott, Harry Ott, Rizer Farms, Marion Rizer, Phillip Rizer, Michael P. Shirer, Thomas R. Stowe, Wesley O. Davis, Davis Farms, John Heirs, Lee Hughs, Mickey Jones, KYM Farms, Inc., and Aubrey Pool, | ) |
| Plaintiffs, | ) |
| v. | ) |
| Monsanto Co., Delta and Pine Land Co., Paymaster Seed Co., UAP Carolinas, Inc., and Mixon Seed Co., Scott Butler, Scott Price, Reasa Thomas, Helena Chemical Co., Carolina Eastern, Inc., Holly Hill Farm Center, North Farm Center, Carolina Eastern Warehouse, Inc., Carolina Eastern-Trenton and Carolina Eastern-Scranton, | ) |
| Defendants. | ) |

Receipt of a copy of the Notice of Removal filed by Defendant, Monsanto Co., by and through their attorneys, in the above-entitled action is hereby acknowledged this _____ day of August, 2002.

Hon. Mylinda D. Nettles Clerk of Court
Hampton County Court of Common Pleas

Hampton, South Carolina